**WAL–MART STORES, INC., Appellant,**

v.

**Linda Ruth SURRATT, Appellee.**

**No. 11–02–00113–CV.**

Court of Appeals of Texas, Eastland.

April 10, 2003.

Rehearing Overruled May 8, 2003.

J. Woodfin Jones, Douglas W. Alexander, Scott, Douglass & McConnico, L.L.P., Attorneys At Law, Austin, and Michael H. Bassett, Grau & Bassett, Attorneys At Law, Dallas, for appellant.

Wendel A. Withrow, John Mongogna, Withrow, Fiscus & Mongogna, Attorneys At Law, Carrollton, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## Opinion

TERRY McCALL, Justice.

This appeal addresses the duty of a business owner/operator to protect its invitees from conditions caused by a natural accumulation of frozen precipitation on its parking lot.[1] Linda Ruth Surratt suffered a serious ankle injury when she slipped and fell on Wal–Mart's parking lot. The parking lot was covered at the time by an accumulation of frozen precipitation caused by a recent ice storm. Citing cases from other jurisdictions, Wal–Mart argues that it did not have a duty to protect its invitees from the conditions caused by natural accumulation of frozen precipitation on its parking lot. We agree.

### Background Facts

The accident in question occurred on December 23, 1998, at one of Wal–Mart's retail stores located in Grayson County. The record reflects that an ice storm had occurred in the area on this date. The event records of the National Climate Data Center describe the ice storm as follows:

A strong arctic cold front moved through North Texas on [December 21, 1998] bringing freezing temperatures to all of North Texas by the morning of [December 22, 1998]. Southwest winds aloft produced overrunning conditions, resulting in cloudy skies and a mixture of freezing rain, sleet, and snow. The precipitation began in the western part of North Texas and spread eastward covering the entire area by [December 23, 1998]. At various times, all North Texas counties had icy streets, bridges, overpasses, and highways. The ice caused at least 2,000 accidents, mainly in the Dallas/Fort Worth Metropolitan area, killing six persons, closing many highways, and cancelling over 400 flights at the Dallas/Fort Worth International Airport. Two homeless persons died of hypothermia, and dozens of people were injured from falling on the ice.

www.ncdc.noaa.gov.

Surratt worked as a manager of a home improvement store. She was not scheduled to work on December 23, 1998. She decided to go to work at approximately 11:00 a.m., however, because several employees of the home improvement store were unable to report for duty as a result of the ice storm. Surratt stopped at Wal–Mart's store on her way to work in order to purchase deicer. Surratt testified that she knew prior to leaving her home that conditions were bad as a result of the ice storm. She drove to the Wal–Mart store in her four-wheel drive vehicle, and she wore hiking boots in order to deal with the treacherous conditions.

Surratt parked approximately 30 feet from the store's entrance. She observed that the parking lot was "slushy" because the frozen precipitation which covered it had begun to melt. Surratt made one trip inside the store and then returned to her vehicle without incident. She slipped and fell in the parking lot while returning to her vehicle after making a second trip inside the store. The record shows that Wal–Mart did not take any measures to either remove the frozen precipitation from its parking lot or lessen the risk posed by the frozen precipitation.

The jury determined that the negligence of both Wal–Mart and Surratt proximately caused the occurrence in question. The jury apportioned 70 percent of the respon-

---

1. As used in this opinion, the term "frozen precipitation" includes the various forms of precipitation which either fall to earth in a frozen state or become frozen after falling to the earth, including snow, sleet, freezing rain, freezing drizzle, ice, or a combination of these forms of precipitation.

sibility for the occurrence to Wal–Mart's negligent conduct and the remaining 30 percent to Surratt's negligent conduct. After making the appropriate reduction for the percentage of responsibility attributed to Surratt, the trial court entered judgment in Surratt's favor in the amount of $196,175. We reverse and render.

## Issues Presented

Wal–Mart asserts two issues on appeal. Wal–Mart presents its no-duty argument in the first issue. In its second issue, Wal–Mart attacks the evidence supporting the jury's award of $150,000 for Surratt's past medical expenses. We do not address Wal–Mart's second issue because our ruling on the first issue is dispositive of this appeal.

## Standard of Review

Wal–Mart filed a motion for judgment notwithstanding the verdict which alleged in part that the jury's liability finding against it was not supported by legally sufficient evidence. Wal–Mart contends that the trial court erred in denying its motion for judgment notwithstanding the verdict. TEX.R.CIV.P. 301 provides that a court may render judgment non obstante veridicto (judgment notwithstanding the verdict) if a directed verdict would have been proper and may disregard any jury finding that has no support in the evidence. A trial court may grant a judgment notwithstanding the verdict if there is no evidence to support one or more of the jury findings on issues necessary to liability. *Brown v. Bank of Galveston, National Association,* 963 S.W.2d 511, 513 (Tex.1998).

We review the denial of a motion for judgment notwithstanding the verdict under a legal sufficiency standard. *Navarette v. Temple Independent School District,* 706 S.W.2d 308, 309 (Tex.1986). In reviewing the legal sufficiency of the evidence, an appellate court must consider all the evidence in the light most favorable to the prevailing party and must indulge every reasonable inference in favor of the prevailing party. *Associated Indemnity Corporation v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998); *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. den'd,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). An appellate court will sustain a no-evidence issue when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the only evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Uniroyal Goodrich Tire Company v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998). If there is more than a scintilla of evidence to support the jury's findings, the motion for judgment notwithstanding the verdict was properly denied. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 228 (Tex.1990).

## Duty

The threshold inquiry in a negligence case is duty. *Greater Houston Transportation Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corporation v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Tort liability depends on both the existence and the violation of a duty. *Greater Houston Transportation Co. v. Phillips,* supra at 525; *El Chico Corporation v. Poole,* supra at 311. Whether a duty exists in a particular case is a question of law for the court to decide from the facts surrounding the occurrence in question. *Texas Home Management, Inc. v. Peavy,* 89 S.W.3d 30, 33 (Tex.2002); *Greater*

*Houston Transportation Co. v. Phillips,* supra at 525. As recently noted by the Texas Supreme Court in *Texas Home Management* :

> The question of legal duty is a multifaceted issue requiring us to balance a number of factors such as the risk and foreseeability of injury, the social utility of the actor's conduct, the consequences of imposing the burden on the actor, and any other relevant competing individual and social interests implicated by the facts of the case. Although the formulation and emphasis varies with the facts of each case, three categories of factors have emerged: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy considerations. (Citations omitted)

*Texas Home Management, Inc. v. Peavy,* supra at 33–34.

We use the same three "categories of factors" which the supreme court used in *Texas Home Management* to resolve Wal-Mart's "no duty" contention in this case. The first element concentrates on the relationship between the parties. This element does not support Wal-Mart's contention as evidenced by the multitude of cases which recognize that a premise owner/operator generally owes a duty to its business invitees to exercise reasonable care. The second element examines the foreseeability of harm to the person injured. This element also does not support Wal-Mart's contention because of the obvious foreseelility that someone will slip and

fall on a parking lot covered by frozen precipitation. The success of Wal-Mart's no-duty contention is therefore dependent upon the third element which focuses on public policy considerations.

■■■ With respect to a slip-and-fall case, the owner/operator owes a duty to its invitees to exercise reasonable care to protect them from dangerous conditions on the premises known or discoverable to it. *Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998); *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536–37 (Tex.1975). "However, a land possessor's duty toward its invitee does not make the possessor an insurer of the invitee's safety." *Wal–Mart Stores, Inc. v. Gonzalez,* supra at 936; *McElhenny v. Thielepape,* 155 Tex. 319, 285 S.W.2d 940, 941 (1956). The liability elements of a slip-and-fall case involving a business invitee are well-defined. The invitee must prove:

(1) Actual or constructive knowledge of some condition on the premises by the owner/operator;

(2) That the condition posed an unreasonable risk of harm;

(3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Wal–Mart Stores, Inc. v. Gonzalez,* supra at 936; *Keetch v. Kroger Company,* 845 S.W.2d 262, 264 (Tex.1992); *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex.1983).[2] The issue of duty is ad-

---

**2.** The negligence question which the trial court submitted to the jury contained the following instruction:

> With respect to the condition of the premises, Wal–Mart was negligent if:
> a. the condition posed an unreasonable risk of harm, and
> b. Wal–Mart knew or reasonably should have known of the danger, and

> c. Wal–Mart failed to exercise ordinary care to protect Linda Ruth Surratt from the danger, by both failing to adequately warn Linda Ruth Surratt of the condition and failing to make that condition reasonably safe.

dressed in the foregoing liability elements by the question which asks if the condition posed an "unreasonable risk of harm." The premises owner/operator only owes a duty to reduce or eliminate conditions which pose an unreasonable risk of harm. *CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 102–03 (Tex.2000). Wal–Mart argues that it did not owe a duty to Surratt because, as a matter of law, a natural accumulation of frozen precipitation does not constitute a condition that poses an "unreasonable risk of harm."

### Massachusetts Rule v. Connecticut Rule

The issue of a premise owner/operator's duty to protect its invitees from an accumulation of frozen precipitation located on its premises has been litigated extensively in states that have colder climates. A comprehensive annotation of the manner in which other jurisdictions have dealt with this issue is contained in Jay Zitter, J.D., Annotation, *Liability of Owner, Operator, or Other Parties, for Personal Injuries Allegedly Resulting from Snow or Ice on Premises of Parking Lot,* 74 A.L.R. 5th 49 (1999). Our sister states have not resolved the duty question uniformly. Two conflicting rules have been adopted by the other jurisdictions. Zitter, supra at 80–83. The "Massachusetts" or "natural accumulation" rule stems from the case of *Woods v. Naumkeag Steam Cotton Company,* 134 Mass. 357 (1883). *Mucsi v. Graoch Associates Limited Partnership # 12,* 144 Wash.2d 847, 31 P.3d 684, 688 (2001). Under the "Massachusetts" rule, a premises owner/operator has no duty to protect invitees from conditions caused by natural accumulations of snow and ice. *Mucsi v. Graoch Associates Limited Partnership # 12, supra* at 688. This rule is based upon the principle that owners/operators would be greatly burdened if they had such a duty. *Mucsi v. Graoch Associates Limited Partnership # 12, supra* at 688. The "Connecticut" rule traces its origin to the case of *Reardon v. Shimelman,* 102 Conn. 383, 128 A. 705 (1925). The "Connecticut" rule rejects the distinction afforded by the "Massachusetts" rule for natural accumulations of snow and ice by holding that an owner/operator has a general duty to remove or eliminate all dangerous conditions on the premises irrespective of their source. *Mucsi v. Graoch Associates Limited Partnership # 12, supra* at 688.

Legal treatises recognize the "Massachusetts" rule as the traditional rule and the "Connecticut" rule as the modern or "restatement" rule. 62A AM. JUR. 2D *Premises Liability* §§ 699–701 (1990). There are at least four reported cases applying Texas law which have dealt with slip-and-fall injuries occurring on frozen precipitation.[3] None of these cases discussed the application of either the "Massachusetts" or "Connecticut" rules. Wal–Mart argues that Texas should adopt the "Massachusetts" rule. Our review of the public policy considerations supporting the "Massachusetts" rule leads us to the conclusion that a premise owner/operator should not have a duty to protect its invitees from a natural accumulation of frozen precipitation occurring on its parking lots.

The supreme court of Wyoming in *Selby v. Conquistador Apartments, Ltd.,* 990 P.2d 491, 494 (Wyo.1999), discussed the rationale supporting the "Massachusetts" rule:

---

**3.** *Pope v. Holiday Inns, Inc.,* 464 F.2d 1303, 1304 (5th Cir.1972)(applying Texas law); *Furr's Inc. v. Logan,* 893 S.W.2d 187 (Tex. App.-El Paso 1995, no writ); *Hall v. Safeway Stores, Inc.,* 360 S.W.2d 536 (Tex.Civ.App.- Eastland 1962, writ ref'd n.r.e.); *Fort Worth & D.C. Ry. Co. v. Hambright,* 130 S.W.2d 436, 438 (Tex.Civ.App.-Amarillo 1939, writ dism'd judgm't cor.).

The justification for the natural-accumulation rule comports with the factors to be considered in determining the existence of a duty. The magnitude of the burden on [the] defendant to prevent injuries from snow or ice is great. As noted above, natural winter conditions make it impossible to prevent all accidents. The plaintiff is in a much better position to prevent injuries from ice or snow because the plaintiff can take precautions at the very moment the conditions are encountered. Even if the plaintiff is unaware of the ice or snow he happens to slip on, he may be charged with knowledge that ice or snow is a common hazard in winter, one which he must consistently guard against. . . . [N]o justification exists for imposing on a property owner a duty to protect invitees from hazards which are naturally occurring and identical to those encountered off of the premises.

(Quoting *Eiselein v. K–Mart, Inc.*, 868 P.2d 893, 897 (Wyo.1994)). The frequency of snowstorms and the duration of cold temperatures have been cited as factors supporting the "Massachusetts" rule in northern states. See *Eiselein v. K–Mart, Inc.*, supra at 897 (citing 62A AM. JUR. 2D *Premises Liability* § 699 (1990)). The effort required to remove frozen precipitation from parking lots in Texas while temperatures remain near or below freezing would appear to be the same as is required in northern states. Due to infrequency of frozen precipitation in our warmer climate, it could be argued that the burden of clearing a frozen parking lot in Texas might be greater because states with colder climates typically have more resources for combating frozen precipitation. Furthermore, most accumulations of frozen precipitation in Texas dissipate without human intervention in a relatively short period of time. The evidence in this case indicates that the incident occurred after the frozen precipitation had already started to melt.

We are reluctant to require a premises owner/operator to expend a great deal of physical and financial effort to protect its invitees from a naturally occurring condition which usually disappears on its own in a short period of time. While the premises owner/operator might avoid this burden by closing its business during times of bad weather, the public is better served if businesses are able to remain open in order to supply consumers with needed goods and services during times of harsh weather conditions. As noted previously, Surratt shopped at Wal Mart for the purpose of purchasing a deicer product to alleviate the adverse conditions caused by frozen precipitation.

There are reported Texas cases which have held that particular conditions occurring naturally on real property did not constitute unreasonably dangerous conditions. In *Brownsville Navigation District v. Izaguirre*, 829 S.W.2d 159, 160–61 (Tex. 1992), the plaintiffs alleged that "plain dirt" which turned to mud when rain occurred constituted an unreasonably dangerous condition. The court rejected this condition by holding that plain dirt which ordinarily becomes soft and muddy when wet is not an unreasonably dangerous condition of property as a matter of law. *Brownsville Navigation District v. Izaguirre*, supra at 160. The plaintiff in *Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex.1996), alleged that the existence of rocks on the dirt floor of a rodeo arena constituted an unreasonably dangerous condition. The court held that, "as a matter of law, a small rock or clod in rodeo arena dirt is not an unreasonably dangerous condition." *Johnson County Sheriff's Posse, Inc. v. Endsley*, supra at 286. *Camp v. J.H. Kirkpatrick Co.*, 250 S.W.2d 413, 418 (Tex.

Civ.App.-San Antonio 1952, writ ref'd n.r.e.), is another Texas case which held that a naturally occurring condition (rain on an exterior entranceway) did not constitute an unreasonably dangerous condition. The court stated, "There is no duty on a proprietor to stay the elements."

In reaching this decision, we are mindful of the holding reached in *Furr's, Inc. v. Logan*, 893 S.W.2d 187 (Tex.App.-El Paso 1995, no writ). The plaintiff slipped on an accumulation of ice in a grocery store's parking lot. *Furr's, Inc. v. Logan*, supra at 189. There was an allegation that the ice formed as a result of water leaking from a vending machine during cold weather. *Furr's, Inc. v. Logan*, supra at 189. Citing *Brownsville Navigation District*, the grocery store argued that it did not owe a duty because an accumulation of ice or water on the ground cannot be an unreasonably dangerous condition. *Furr's, Inc. v. Logan*, supra at 190–91. The El Paso Court of Appeals rejected the grocery store's argument by holding that *Brownsville Navigation District* does not stand for the proposition that a natural condition can never be the basis of premises liability. *Furr's, Inc. v. Logan*, supra at 191.

*Furr's, Inc.* is distinguishable both factually and analytically from this case. From a factual perspective, *Furr's, Inc.* did not involve a natural accumulation of frozen precipitation. To the contrary, the ice formed as a result of water leaking from a vending machine. *Furr's, Inc. v. Logan*, supra at 189. Furthermore, the court did not analyze the policy implications of either the "Massachusetts" or "Connecticut" rules.

It should also be noted that the Fort Worth Court of Appeals has recently issued an opinion which suggests that *Brownsville Navigation District* and *Johnson County Sheriff's Posse, Inc.* should be narrowly construed. The plaintiff in *Rape v. M.O. Dental Lab*, 95 S.W.3d 712, 713 (Tex.App.-Fort Worth 2003, pet'n filed), alleged that she slipped and fell on a "slippery mud substance" located on a sidewalk. She alleged that the accumulation of the slippery mud substance on the sidewalk constituted an unreasonably dangerous condition. *Rape v. M.O. Dental Lab*, supra at 713–14. In granting the premises owner's/operator's motion for summary judgment, the trial court determined that no dangerous condition existed on the premises as a matter of law. *Rape v. M.O. Dental Lab*, supra at 714. The plaintiff argued on appeal that there was a genuine issue of fact as to whether the slippery mud substance was a condition posing an unreasonable risk of harm.

The Fort Worth Court of Appeals analyzed the holdings in *Brownsville Navigation District* and *Johnson County Sheriff's Posse, Inc.* in reaching its decision to reverse the summary judgment. It distinguished those cases on the basis that they did not involve a man-made, paved surface. *Rape v. M.O. Dental Lab*, supra at 717–18. The court additionally cited *Furr's, Inc.* in support of its conclusion that *Brownsville Navigation District* and *Johnson County Sheriff's Posse, Inc.* should be narrowly construed. *Rape v. M.O. Dental Lab*, supra at 718.

The condition of the premises considered in *M.O. Dental Lab* is much different than the condition at issue in this appeal. *M.O. Dental Lab* involved a small amount of a slippery mud substance deposited on a portion of a parking lot. *Rape v. M.O. Dental Lab*, supra at 713. This case involves a condition which affected a wide area that included the premises owner's/operator's entire parking lot. The public policy considerations are significantly different for a condition which affects a wide area as opposed to a condition which only affects an isolated, small area.

We do not rely on *Brownsville Navigation District* and *Johnson County Sheriff's Posse, Inc.* for the broad proposition that a naturally occurring condition can never be the basis of a premises liability claim. Instead, we cite these cases as examples of Texas courts recognizing that, in some instances, conditions occurring naturally on real property are not unreasonably dangerous. The fact that a particular condition occurs naturally is significant to our analysis because the premises owner/operator is unable to prevent the condition from occurring.

### Our Holding

■■■■ We hold that a premises owner/operator does not have a duty to protect its invitees from conditions caused by a natural accumulation of frozen precipitation on its parking lot because such an accumulation does not constitute an unreasonably dangerous condition. We expressly limit our "no duty" holding to the premises owner's/operator's parking lot. The question of the duty owed with respect to natural accumulations of frozen precipitation occurring on sidewalks, entryways, and other areas intended for pedestrian traffic is not before us.

### Our Ruling

There is no evidence in the record that Surratt slipped and fell on anything other than a natural accumulation of frozen precipitation in Wal–Mart's parking lot. In light of our "no duty" holding, there is no evidence that Wal–Mart failed to exercise reasonable care to reduce or eliminate the risk caused by a condition posing an unreasonable risk of harm. Thus, the trial court erred in denying Wal–Mart's motion for judgment notwithstanding the verdict. Wal–Mart's first appellate issue is sustained.

The judgment of the trial court is reversed, and judgment is rendered that Linda Ruth Surratt take nothing.