IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00269-CV

 

Andre Daniel Gagne 

and Karen Gagne,

                                                                                Appellants

 v.

 

Sears, Roebuck and Co., 

Coyote Management, L. P., and

Xencom Facility Management, L.L.C.,

                                                                                Appellees

 

 

 



From the 78th District Court

Wichita County, Texas

Trial Court No. 159,992-B

 



Opinion



 








          In this appeal, we must determine
whether a premises owner is liable to an invitee for injuries sustained when
the invitee slipped and fell on ice which had naturally accumulated on a
sidewalk near the entrance of a business because of an ice storm.  Because we
will conclude that a premises owner is not liable under these circumstances, we
will affirm the summary judgment rendered in favor of Appellees.

 

Background

          The facts are not disputed.  A winter
storm brought accumulations of ice to Wichita Falls in the early morning
hours.  Andre Gagne went to the Sears in the Sikes Senter Mall that morning to
shop for a new washing machine.  He slipped on ice on the sidewalk near the
Sears entrance and suffered a fractured hip.

          The mall was managed by Coyote
Management, L.P., which had contracted with Xencom Facility Management, L.L.C.
to maintain the common areas.  Xencom employees had been spreading salt on the
mall sidewalks but had not reached the western entrance where Sears was
located.

          Gagne and his wife filed suit against
Sears, Coyote, and Xencom alleging they had a duty to exercise reasonable care
to protect Gagne from the ice which had accumulated on the mall sidewalk. 
Sears, Coyote, and Xencom filed summary judgment motions contending that they owed
no duty to Gagne because naturally accumulating ice does not pose an
unreasonable risk of harm to invitees.  The court granted their summary
judgment motions and rendered a take-nothing judgment in their favor.

Premises Liability

          A premises owner owes a duty to an
invitee “to exercise reasonable care to protect against danger from a condition
on the land that creates an unreasonable risk of harm of which the owner or
occupier knew or by the exercise of reasonable care would discover.”  CMH
Homes, Inc. v. Daenen, 15 S.W.3d 97, 101 (Tex. 2000); accord W. Invs.,
Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005); Wal-Mart Stores, Inc. v.
Surratt, 102 S.W.3d 437, 441-42 (Tex. App.—Eastland 2003, pet. denied).

          The Supreme Court recently concluded
that “naturally accumulating mud” on a sidewalk near a business entrance does
not pose an unreasonable risk of harm.   See M.O. Dental Lab v. Rape,
139 S.W.3d 671, 675-76 (Tex. 2004) (per curiam).  The Court observed:

Ordinary mud that accumulates naturally on an
outdoor concrete slab without the assistance or involvement of unnatural
contact is, in normal circumstances, nothing more than dirt in its natural
state and, therefore, is not a condition posing an unreasonable risk of harm.

 

          Holding a landowner accountable for
naturally accumulating mud that remains in its natural state would be a heavy
burden because rain is beyond the control of landowners.  Most invitees in Texas will encounter natural conditions involving ordinary mud regularly, and accidents
involving naturally accumulating mud and dirt are bound to happen, regardless
of the precautions taken by landowners.  Generally, invitees like Rape are at
least as aware as landowners of the existence of visible mud that has
accumulated naturally outdoors and will often be in a better position to take
immediate precautions against injury.

 

Id.

          The Eastland Court of Appeals recently
came to the same conclusion in a case involving a plaintiff who slipped and fell
on naturally accumulated ice in a parking lot.  See Wal-Mart Stores, 102
S.W.3d at 445.  However, the Eastland Court expressly limited its holding to
frozen precipitation on a parking lot and left open the possibility that
“natural accumulations of frozen precipitation occurring on sidewalks,
entryways, and other areas intended for pedestrian traffic” may be subject to a
different rule.  Id.

          The Eastland Court recognized that
states generally follow either the “Massachusetts Rule” or the “Connecticut
Rule” in determining a premises owner’s duty in this situation.  See id.
at 442 (citing Jay Zitter, Annotation, Liability of Owner, Operator, or
Other Parties, for Personal Injuries Allegedly Resulting from Snow or Ice on
Premises of Parking Lot, 74 A.L.R. 5th 49 (1999)).  The Massachusetts Rule
has its origin with the decision of the Supreme Court of Massachusetts in Woods
v. Naumkeag Steam Cotton Co.  134 Mass. 357 (1883) (cited by Wal-Mart
Stores, 102 S.W.3d at 442).  In Woods, the Court held that “there
was no duty on the part of the defendant to the plaintiff to remove from the
steps the ice and snow which naturally accumulated thereon.”  134 Mass. at 361.

          Conversely, the Connecticut Rule has
its origin with the decision of the Supreme Court of Errors of Connecticut in Reardon v. Shimelman.  102 Conn. 383, 128 A. 705 (1925) (cited by Wal-Mart
Stores, 102 S.W.3d at 442).  In Reardon, the Court expressly
rejected the Massachusetts Rule and held that:

an accumulation of ice or snow upon a common
approach to a tenement house may impose upon the landlord a liability for
injuries due to it, provided he knew, or in the exercise of a reasonable
oversight ought to have known, of the existence of the dangerous condition and
failed to exercise reasonable care to provide against injury by reason of it.

 

128 A. at 707.

          The Eastland Court reviewed these
competing lines of authority and contemplated public policy considerations
expressed in Texas jurisprudence on the subject of premises liability before
concluding that a natural accumulation of frozen precipitation on a parking lot
does not constitute an unreasonably dangerous condition.  See Wal-Mart
Stores, 102 S.W.3d at 442-45.

          After reviewing the considerations
expressed by the Supreme Court in M.O. Dental Lab, we conclude that the
same rule applies to a sidewalk at the entrance to a business.  The primary
distinction to be drawn between the mud at issue in that case and the ice at
issue here is that “invitees in Texas will [not] encounter natural conditions
involving ordinary [ice] regularly.”  See M.O. Dental Lab, 139 S.W.3d at
676.  In every other respect however, naturally accumulating mud and naturally
accumulating ice pose the same risk of harm.  To paraphrase the Supreme Court:

          Holding a landowner accountable for
naturally accumulating [ice] that remains in its natural state would be a heavy
burden because [precipitation] is beyond the control of landowners.  .  .  . 
[A]ccidents involving naturally accumulating [ice] are bound to happen,
regardless of the precautions taken by landowners.  Generally, invitees like [Gagne]
are at least as aware as landowners of the existence of [ice] that has
accumulated naturally outdoors and will often be in a better position to take
immediate precautions against injury.

 

Id.

          We do not summarily discount the fact
that ice storms in Texas are a rare event.  However, the regularity of such
occurrences is only one of many factors to be considered in our analysis.  The Eastland Court apparently did not consider this factor as a sufficient basis to impose
liability on Wal-Mart for ice which had accumulated on its parking lot. 
Rather, that court attached significance to the fact that the ice had
accumulated naturally.  See Wal-Mart Stores, 102 S.W.3d at 445.

We agree that the fact of natural accumulation
is significant in this analysis.  In light of M.O. Dental Lab, we see no
basis for differentiating between a natural accumulation of ice in the parking
lot and one on a sidewalk near a business entrance.  Therefore, we hold that
the natural accumulation of ice on a sidewalk near the entrance of a business
does not pose an unreasonable risk of harm to invitees.  Accordingly, we
overrule the Gagnes’ sole issue and affirm the judgment.

 

FELIPE REYNA

Justice




Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurs only in the holding, as expressed in the last paragraph of
the opinion, and the judgment)

(Justice
Vance dissents from the judgment with a note)* 

Affirmed

Opinion delivered and
filed July 19, 2006

[CV06]

 

*(Note
by Justice Vance:  “I would analyze hazards from accumulations of ice or snow
upon a sidewalk, entryway, or other area intended for pedestrian traffic under
the general rules governing a landlord’s or possessor’s duty to invitees. See
Mucsi v. Graoch Assoc. Ltd Partnership #12, 144 Wash.2d 847, 31 P.3d 684,
690 (2001) (recognizing that a landowner is not a guarantor of safety: “To
prevail, a plaintiff must prove the landowner (1) had actual or constructive
notice of the danger, and (2) failed within a reasonable time to exercise
sensible care in alleviating the situation.”).  This analysis is consistent
with the four elements of an invitee’s claim, reaffirmed in CMH Homes, Inc.
v. Daenen, 15 S.W.3d 97, 99-100 (Tex. 2000) (citing Restatement (Second) of
Torts § 343 (1965); Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934,
936 (Tex. 1998); Motel 6 G.P., Inc. v. Lopez, 929 S.W.2d 1, 3 (Tex.
1996); Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992); Corbin
v. Safeway Stores, Inc., 648 S.W.2d 292, 296 (Tex. 1983)); see also
Houston v. Northwest Village, Ltd., 113 S.W.3d 443, 446 (Tex. App.—Amarillo
2003, no pet.) (a landlord's duties to the invitees of its tenants include the
duty to exercise reasonable care to discover unreasonably dangerous conditions
on those parts of the premises over which the landlord retains control).  Thus,
indulging every reasonable inference in the Gagnes’ favor, I would reverse the
summary judgment and remand for a trial on the Corbin elements.”)