**Andre Daniel GAGNE and Karen Gagne, Appellants,**

v.

**SEARS, ROEBUCK AND CO., Coyote Management, L.P., and Xencom Facility Management, L.L.C., Appellees.**

No. 10–05–00269–CV.

Court of Appeals of Texas, Waco.

July 19, 2006.

Rehearing Overruled Aug. 22, 2006.

Gary Southard, James Rasmussen, Wichita Falls, for Appellants.

Paul Boudloche, Mason & Boudloche, LLP, Fort Worth, for Appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

In this appeal, we must determine whether a premises owner is liable to an invitee for injuries sustained when the invitee slipped and fell on ice which had naturally accumulated on a sidewalk near the entrance of a business because of an ice storm. Because we will conclude that a premises owner is not liable under these circumstances, we will affirm the summary judgment rendered in favor of Appellees.

### Background

The facts are not disputed. A winter storm brought accumulations of ice to Wichita Falls in the early morning hours. Andre Gagne went to the Sears in the Sikes Senter Mall that morning to shop for a new washing machine. He slipped on ice on the sidewalk near the Sears entrance and suffered a fractured hip.

The mall was managed by Coyote Management, L.P., which had contracted with Xencom Facility Management, L.L.C. to maintain the common areas. Xencom employees had been spreading salt on the mall sidewalks but had not reached the western entrance where Sears was located.

Gagne and his wife filed suit against Sears, Coyote, and Xencom alleging they had a duty to exercise reasonable care to protect Gagne from the ice which had accumulated on the mall sidewalk. Sears, Coyote, and Xencom filed summary judg-

ment motions contending that they owed no duty to Gagne because naturally accumulating ice does not pose an unreasonable risk of harm to invitees. The court granted their summary judgment motions and rendered a take-nothing judgment in their favor.

## Premises Liability

A premises owner owes a duty to an invitee "to exercise reasonable care to protect against danger from a condition on the land that creates an unreasonable risk of harm of which the owner or occupier knew or by the exercise of reasonable care would discover." *CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 101 (Tex.2000); accord *W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005); *Wal–Mart Stores, Inc. v. Surratt,* 102 S.W.3d 437, 441–42 (Tex.App.-Eastland 2003, pet. denied).

The Supreme Court recently concluded that "naturally accumulating mud" on a sidewalk near a business entrance does not pose an unreasonable risk of harm. *See M.O. Dental Lab v. Rape,* 139 S.W.3d 671, 675–76 (Tex.2004) (per curiam). The Court observed:

Ordinary mud that accumulates naturally on an outdoor concrete slab without the assistance or involvement of unnatural contact is, in normal circumstances, nothing more than dirt in its natural state and, therefore, is not a condition posing an unreasonable risk of harm.

Holding a landowner accountable for naturally accumulating mud that remains in its natural state would be a heavy burden because rain is beyond the control of landowners. Most invitees in Texas will encounter natural conditions involving ordinary mud regularly, and accidents involving naturally accumulating mud and dirt are bound to happen, regardless of the precautions taken by landowners. Generally, invitees like

Rape are at least as aware as landowners of the existence of visible mud that has accumulated naturally outdoors and will often be in a better position to take immediate precautions against injury.

*Id.*

The Eastland Court of Appeals recently came to the same conclusion in a case involving a plaintiff who slipped and fell on naturally accumulated ice in a parking lot. *See Wal–Mart Stores,* 102 S.W.3d at 445. However, the Eastland Court expressly limited its holding to frozen precipitation on a parking lot and left open the possibility that "natural accumulations of frozen precipitation occurring on sidewalks, entryways, and other areas intended for pedestrian traffic" may be subject to a different rule. *Id.*

The Eastland Court recognized that states generally follow either the "Massachusetts Rule" or the "Connecticut Rule" in determining a premises owner's duty in this situation. *See id.* at 442 (citing Jay Zitter, Annotation, *Liability of Owner, Operator, or Other Parties, for Personal Injuries Allegedly Resulting from Snow or Ice on Premises of Parking Lot,* 74 A.L.R. 5th 49 (1999)). The Massachusetts Rule has its origin with the decision of the Supreme Court of Massachusetts in *Woods v. Naumkeag Steam Cotton Co.* 134 Mass. 357 (1883) (cited by *Wal–Mart Stores,* 102 S.W.3d at 442). In *Woods,* the Court held that "there was no duty on the part of the defendant to the plaintiff to remove from the steps the ice and snow which naturally accumulated thereon." 134 Mass. at 361.

Conversely, the Connecticut Rule has its origin with the decision of the Supreme Court of Errors of Connecticut in *Reardon v. Shimelman,* 102 Conn. 383, 128 A. 705 (1925) (cited by *Wal–Mart Stores,* 102 S.W.3d at 442). In *Reardon,* the Court expressly rejected the Massachusetts Rule and held that:

an accumulation of ice or snow upon a common approach to a tenement house may impose upon the landlord a liability for injuries due to it, provided he knew, or in the exercise of a reasonable oversight ought to have known, of the existence of the dangerous condition and failed to exercise reasonable care to provide against injury by reason of it.

128 A. at 707.

The Eastland Court reviewed these competing lines of authority and contemplated public policy considerations expressed in Texas jurisprudence on the subject of premises liability before concluding that a natural accumulation of frozen precipitation on a parking lot does not constitute an unreasonably dangerous condition. *See Wal–Mart Stores,* 102 S.W.3d at 442–45.

After reviewing the considerations expressed by the Supreme Court in *M.O. Dental Lab,* we conclude that the same rule applies to a sidewalk at the entrance to a business. The primary distinction to be drawn between the mud at issue in that case and the ice at issue here is that "invitees in Texas will [not] encounter natural conditions involving ordinary [ice] regularly." *See M.O. Dental Lab,* 139 S.W.3d at 676. In every other respect however, naturally accumulating mud and naturally accumulating ice pose the same risk of harm. To paraphrase the Supreme Court:

Holding a landowner accountable for naturally accumulating [ice] that remains in its natural state would be a heavy burden because [precipitation] is beyond the control of landowners.... [A]ccidents involving naturally accumulating [ice] are bound to happen, regardless of the precautions taken by landowners. Generally, invitees like [Gagne]

are at least as aware as landowners of the existence of [ice] that has accumulated naturally outdoors and will often be in a better position to take immediate precautions against injury.

*Id.*

We do not summarily discount the fact that ice storms in Texas are a rare event. However, the regularity of such occurrences is only one of many factors to be considered in our analysis. The Eastland Court apparently did not consider this factor as a sufficient basis to impose liability on Wal–Mart for ice which had accumulated on its parking lot. Rather, that court attached significance to the fact that the ice had accumulated naturally. *See Wal–Mart Stores,* 102 S.W.3d at 445.

We agree that the fact of natural accumulation is significant in this analysis. In light of *M.O. Dental Lab,* we see no basis for differentiating between a natural accumulation of ice in the parking lot and one on a sidewalk near a business entrance. Therefore, we hold that the natural accumulation of ice on a sidewalk near the entrance of a business does not pose an unreasonable risk of harm to invitees. Accordingly, we overrule the Gagnes' sole issue and affirm the judgment.

Chief Justice GRAY concurs only in the holding, as expressed in the last paragraph of the opinion, and the judgment.

Justice VANCE dissents from the judgment with a note.*

---

* (Note by Justice Vance: "I would analyze

hazards from accumulations of ice or snow

upon a sidewalk, entryway, or other area intended for pedestrian traffic under the general rules governing a landlord's or possessor's duty to invitees. See *Mucsi v. Graoch Assoc. Ltd Partnership # 12*, 144 Wash.2d 847, 31 P.3d 684, 690 (2001) (recognizing that a landowner is not a guarantor of safety: "To prevail, a plaintiff must prove the landowner (1) had actual or constructive notice of the danger, and (2) failed within a reasonable time to exercise sensible care in alleviating the situation."). This analysis is consistent with the four elements of an invitee's claim, reaffirmed in *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99–100 (Tex.2000) (citing Restatement (Second) of Torts § 343 (1965); *Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998); *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex.1996); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983)); *see also Houston v. Northwest Village, Ltd.*, 113 S.W.3d 443, 446 (Tex.App.-Amarillo 2003, no pet.) (a landlord's duties to the invitees of its tenants include the duty to exercise reasonable care to discover unreasonably dangerous conditions on those parts of the premises over which the landlord retains control). Thus, indulging every reasonable inference in the Gagnes' favor, I would reverse the summary judgment and remand for a trial on the *Corbin* elements.")