# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-06-00211-CV

**Gary Fair and Linda Fair, Appellants**

**v.**

**Scott and White Memorial Hospital and Scott, Sherwood and Brindley Foundation; Scott and White Memorial Hospital; and Scott and White Properties, Inc., Appellees**

FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
NO. 208,931-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Gary Fair slipped and fell on ice that had accumulated outside Temple's Scott and White Memorial Hospital during a winter storm. Mr. Fair and his wife, Linda, sued the Scott and White Memorial Hospital and Scott, Sherwood and Brindley Foundation, Scott and White Properties, Inc., and "Scott and White Memorial Hospital" (collectively "appellees") for damages arising from the injuries Mr. Fair sustained as a result of his fall. The appellees moved for summary judgment on three grounds relevant to this appeal: (1) as a matter of law, the condition of accumulated ice did not pose an unreasonable risk of harm under the principles enunciated in *M. O. Dental Lab v. Rape*, 139 S.W.3d 671, 672-73 (Tex. 2004) (per curiam), and *Wal-Mart Stores, Inc. v. Surratt*, 102 S.W.3d 437, 442-45 (Tex. App.—Eastland 2003, pet. denied), because the ice had accumulated due to natural forces and had remained in its natural state; (2) Mrs. Fair's claims are entirely derivative of Mr. Fair's; and (3) the Scott, Sherwood and Brindley Foundation was the sole

owner, occupier or manager of the premises at issue and there is no evidence that Scott and White Properties, Inc. and "Scott and White Memorial Hospital" were.[1]  The district court granted appellees' motion in its entirety without stating the grounds and rendered final judgment that the Fairs take nothing on their claims.  The Fairs appealed.

Although the Fairs appeal the judgment as to all three appellees, they have not challenged the "no evidence" ground that could support summary judgment for Scott and White Properties, Inc., and "Scott and White Memorial Hospital." Consequently, we will affirm the district court's judgment as to those parties.  *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Bradley v. State ex rel White*, 990 S.W.2d 245, 247 (Tex. 1999).  However, because we conclude on this record that the Scott and White Memorial Hospital and Scott, Sherwood and Brindley Foundation ("the Foundation") has not established its entitlement to summary judgment with regard to the Fairs' claims against it, we must reverse that part of the judgment and remand for further proceedings.

We review the district court's summary judgment de novo.  *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Knott*, 128 S.W.3d at 215.  Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 291 (Tex. 2004) (citing *Knott*, 128 S.W.3d at 215-16).  In deciding whether there is a disputed material fact issue precluding summary judgment, we take as true proof favorable to the non-movant, and we indulge

---

[1]  The Fairs also filed a cross-motion for summary judgment, which the district court denied. The Fairs do not appeal from this ruling, as the grounds they presented in their cross-motion did not overlap with the appellees' three grounds.

every reasonable inference and resolve any doubt in favor of the non-movant. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Texas Woman's Univ. v. Methodist Hosp.*, 221 S.W.3d 267, 276 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We may affirm a summary judgment when the record shows that a movant has conclusively disproved at least one element of each of the plaintiff's claims or has established all of the elements of an affirmative defense as to each claim. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos.*, 217 S.W.3d 653, 660-61 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).[2]

The Fairs allege that appellees were negligent in failing to exercise ordinary care to discover and make safe or warn of the accumulated ice on which Mr. Fair allegedly slipped and injured himself. This is a theory of premises liability. *See In re Tex. Dep't of Transp.*, 218 S.W.3d 74, 77-78 (Tex. 2007) (distinguishing between premises defect claims and "negligent activity" claims); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992) (same). Under a premises liability theory, the duty owed by the premises owner or occupier—here, the Foundation—depends upon whether the entrant had the status of an invitee, licensee, or trespasser. For purposes of this summary judgment proceeding, the Foundation does not dispute that both Mr. and Mrs. Fair had the status of invitees. An owner or occupier owes a duty to its invitees to exercise reasonable care to

---

[2] On appeal, the Fairs filed an appendix to their brief containing what appear to be the entire transcripts from the depositions of Mr. Fair, Scott and White grounds supervisor Melissa Frei, and security department manager Thomas Suhling. Appellees filed a motion to strike any portions of these depositions that had not been included in the summary-judgment record. The Fairs subsequently agreed to this requested relief. We grant the motion and strike all portions of these depositions that were not included in the summary-judgment record.

protect them from dangerous conditions on the premises known or discoverable to it. *Wal-Mart Stores v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). This duty, however, "does not make the possessor an insurer of the invitee's safety." *Id*. To establish the owner or occupier's liability to an invitee for a condition existing on the premises, the following elements must be proven: (1) the owner or occupier had actual or constructive knowledge of a condition on the premises; (2) the condition posed an "unreasonable risk of harm"; (3) the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner or occupier's failure to use such care proximately caused the invitee's injury. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000). Appellees' summary-judgment motion targeted the second element: it contended that, as a matter of law, natural accumulations of ice do not pose an unreasonable risk of harm and that the ice accumulation in which Mr. Fair slipped was in its natural state.[3]

In support of this legal principle, appellees relied on the supreme court's holding in *M.O. Dental Lab* that "[o]rdinary mud that accumulates naturally on an outdoor concrete slab without the assistance or involvement of unnatural contact is, in normal circumstances, nothing more than dirt in its natural state and, therefore, is not a condition posing an unreasonable risk of harm," 139 S.W.3d at 676, and the Eastland Court of Appeals' earlier holding in *Surratt*, in which it applied the "Massachusetts Rule" that accumulated ice in its natural condition does not present an

---

[3] On appeal, appellees assert that, "[e]ven in the absence of *Wal-Mart* and *M.O. Dental Lab*, Appellees would have been entitled to summary judgment" because whatever duty they had to warn the Fairs of the risk posed by the ice was obviated by Mr. Fair's admitted awareness of it and "there was nothing to warn him about." However, appellees did not raise this ground in their motion, so we cannot consider it as a basis for affirming the summary judgment. *See City of Midland v. O'Bryant*, 18 S.W.3d 209, 218 (Tex. 2000).

unreasonable risk of harm. 102 S.W.3d at 442-45. The Fairs contend that both cases are distinguishable—they observe that *M.O. Dental Lab* involved mud, not ice, and portray the rationale of *Surratt* as limited solely to falls occurring in parking lot locations more remote than the site of Mr. Fair's fall.[4] In the alternative, the Fairs urge that appellees did not meet their summary-judgment burden of conclusively demonstrating that the ice at the site of Mr. Fair's fall was in its natural condition at the time of the fall. We agree with the Fairs that appellees did not meet their summary-judgment burden as to whether the ice where Mr. Fair fell was in its natural condition.

In support of their summary-judgment motion, appellees submitted the affidavits of Andy Anderson, Chief Meteorologist at Temple's KCEN television station, and Melissa Frei, Grounds Supervisor at Scott and White Hospital at the time of Mr. Fair's fall. Mr. Anderson, who averred to having 25 years' experience as a meteorologist, stated that "[b]eginning on Monday afternoon, February 24, 2005, an Arctic Cold Front arrived in the Temple, Texas area," and that the temperature fell below freezing (32 degrees Fahrenheit) at 5:30 p.m. "[R]ain began to freeze on contact with exposed surfaces," and "[i]ce pellets were also observed in the area helping create a glaze on sidewalks and roads." "By midnight," Anderson added, ".50" of snow was on the ground, and the temperature had fallen to 25 degrees."

"Winter precipitation continued until the early morning of Tuesday, February 25, 2005," according to Anderson, with ".12" to .55" additional precipitation since midnight."

---

[4] *But see Gagne v. Sears, Roebuck & Co.*, 201 S.W.3d 856, 858 (Tex. App.—Waco 2006, no pet.) ("In light of *M.O. Dental Lab*, we see no basis for differentiating between a natural accumulation of ice in the parking lot and one on a sidewalk near a business entrance. Therefore, we hold that the natural accumulation of ice on a sidewalk near the entrance of a business does not pose an unreasonable risk of harm to invitees.").

Further, "an additional trace of snow was measured," and "periods of ice pellets and ice fog were observed." Anderson noted that secondary roads across most of Bell County were rendered impassible due to accumulations of 1.5 inches of ice. On February 25, Anderson added, "[t]emperatures fell to 22 degrees shortly after dawn and warmed to only 26 by late afternoon." The temperature did not rise above freezing until the afternoon of Wednesday, February 27, Anderson continued, and the roads were not clear until the following day.

In her affidavit, Frei discussed the impact of the ice storm on the Scott and White grounds in particular. She averred that, as Grounds Supervisor, she was personally present at the hospital on February 24 and 25, 2005, and "personally observed" that an ice storm hit the Temple area on the 24th and caused ice accumulations "in the area, including, but not limited to, the parking lot, road, and steps in front of the Special Treatment Center at the hospital." According to Frei, "All exposed surfaces on the parking lot, road, and steps in this location were covered with ice." Regarding the condition of the ice accumulations at the time and location where Mr. Fair fell, Frei stated that "[t]he ice accumulations were caused by forces of nature, and not by any human action" and that "[t]he accumulations of ice in the parking lot and road remained in their natural state until after Gary Fair is reported to have fallen in this location." Other than to state that the facts within her affidavit "are within my personal knowledge" and that she "personally observed" them in her capacity as Grounds Supervisor, Frei did not elaborate on the basis of her knowledge regarding the condition of the ice at the time and location where Mr. Fair fell.

The Fairs attached to their summary-judgment response excerpts from Frei's deposition in which she testified that she had "no idea" or familiarity regarding the particular

6

incident where Mr. Fair fell and was injured, that she had not been at the scene or been called to the scene, and that she had not heard about the incident during the day on which it occurred.[5] Frei's deposition testimony controverts her assertions of personal knowledge regarding the condition of the ice accumulations at the time and location where Mr. Fair fell that were contained in her affidavit. Accordingly, Frei's affidavit cannot support summary judgment with regard to whether the ice accumulations where and when Mr. Fair fell were in their natural state. *See* Tex. R. Civ. P. 166a(c), (f).

Appellees also attached excerpts from Mr. Fair's deposition, in which he described the circumstances of his fall. Regarding the condition of the ice at the site of the fall, appellees point to Mr. Fair's testimony that the location where he fell had not been *sanded*. This

---

[5]

Q:  Do you keep records of – Do you have any familiarity with the particular incident where Mr. Fair slipped and fell and was injured?

A:  I have no idea.

Q:  You weren't at the scene or called to the scene?

A:  No, sir.

Q:  You never met Mr. Fair?

A:  No, sir.

Q:  Did you go to the scene – Or did you hear about the accident during the day?

A:  No, sir.

testimony alone does not conclusively establish that the ice where Mr. Fair fell was necessarily in its natural condition.

Appellees did not present any other summary-judgment evidence regarding whether the ice accumulation where and when Mr. Fair fell was in its natural condition. On this record, appellees did not conclusively establish that the ice accumulation was in its natural state and was not an unreasonably dangerous condition. For these reasons, we affirm the district court's summary judgment that the Fairs take nothing on their claims against Scott and White Properties, Inc., and "Scott and White Memorial Hospital," but reverse its judgment that the Fairs take nothing on their claims against the Foundation. We remand for further proceedings consistent with this opinion.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed in part, Reversed and Remanded in part

Filed:   June 13, 2008