Ann ESTEP and James Estep, Appellants,

v.

B.F. SAUL REAL ESTATE INVESTMENT TRUST and the McAlpin Company, Appellees.

No. 91–CA–002323–MR.

Court of Appeals of Kentucky.

Dec. 11, 1992.

Albert B. McQueen, Jr., Lexington, for appellants.

William C. Shouse, Anne M. Walker, Landrum & Shouse, Lexington, for appellee/B.F. Saul Real Estate Inv. Trust.

Barbara A. Kriz, Gallion, Baker & Bray, Lexington, for appellee/The McAlpin Co.

Before JOHNSON, McDONALD and STUMBO, JJ.

STUMBO, Judge:

This appeal arises from a negligence claim filed by appellants, Ann Estep and James Estep. By two separate Opinion and Orders, the Fayette Circuit Court granted summary judgment to appellees, B.F. Saul Real Estate Investment Trust, and The McAlpin Company (hereinafter "Saul" and "McAlpins," respectively). After reviewing the record and the law, we must reverse and remand.

The genesis of this case was a slip and fall by Ann Estep on December 19, 1989, on a portion of the sidewalk near the entrance to McAlpins, at the Lexington Mall. She sued for her personal injuries, while her husband sued for loss of consortium. Saul is the owner and operator of the mall, in which McAlpins has a store.

There is no question whether the Esteps were generally aware of the inclement weather conditions, since they had driven to Lexington from their home in Whitesburg the previous day, and the roads were hazardous due to snow and ice. Moreover, the Esteps were aware of a light snow fall on the morning of the accident, which had ceased prior to their arrival at the mall.

When they got to the mall, at approximately 11:30 a.m., the parking lot had been scraped and the snow piled. They also thought the sidewalks had been cleared, although they noted a "thin skiff" of snow thereon. They walked across the parking lot and stepped over piled snow onto the sidewalk near the entrance to McAlpins. After taking several careful steps, Ann slipped and fell. James also apparently slipped, but did not fall. Ann attributed her fall to ice concealed under the snow.

The record does not disclose who performed the snow removal. An affidavit from the Esteps' counsel indicates he was told Saul hired two subcontractors to clean and salt the sidewalk. However, the lease

between Saul and McAlpins requires McAlpins to keep the sidewalk adjoining its store free of ice and snow.

The Esteps originally only filed a claim against Saul. During discovery, the lease provision above-noted was disclosed, which precipitated an amended complaint joining McAlpins as an additional party defendant. As a result of the timing of Saul's motion for summary judgment, and the motion to amend, the trial court issued two separate, but essentially identical, summary judgments in favor of each of the defendants. The trial court based its ruling upon *Standard Oil Company v. Manis*, Ky., 433 S.W.2d 856 (1968), which held *"natural outdoor hazards* which are as obvious to an invitee as to the owner of the premises do not constitute *unreasonable* risks to the former which the landowner has a duty to remove or warn against." *Id.* at 858 (emphasis in original).

The Esteps first challenge to the summary judgment is that the trial court employed the wrong standard for summary judgment. The standard for summary judgment in Kentucky has been definitely announced in *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991).[1] There, our Supreme Court adhered to the principle that summary judgment should be cautiously applied and not used as a substitute for trial. *Id.* at 483. It stated that summary judgment "should only be used 'to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in its favor and against movant.'" *Id.*, quoting *Paintsville Hospital Company v. Rose*, Ky., 683 S.W.2d 255, 256 (1985). Nonetheless, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing there is a genuine issue of material fact for trial." *Steelvest*, 807 S.W.2d at 482.

We have carefully reviewed the trial court's summary judgment opinions. They both properly apply the standards of *Steelvest, supra*, enunciated above.

█ The next argument presented relates to the merits of the summary judgment. Specifically, the Esteps attempt to avoid *Standard Oil, supra*, by arguing the ice under the snow was not an obvious natural hazard. Since ice is a readily foreseeable companion for snow, and should be reasonably anticipated by pedestrians, it is arguably an obvious natural hazard. However, not "all natural conditions outdoors are equally apparent to landowners and invitees. On the contrary, whether a natural hazard like ice and snow is obvious depends upon the unique facts of each case." *Schreiner v. Humana, Inc.*, Ky., 625 S.W.2d 580, 581 (1982). As a result, it appears that there is a genuine issue as to whether Saul or McAlpins knew of the ice under the snow, which was not obvious to the Esteps. *Id.*

We are aware that *Schreiner* predates *Corbin Motor Lodge v. Combs*, Ky., 740 S.W.2d 944 (1987), which affirmed the no duty rule of *Standard Oil*. There was no mention of *Schreiner* in *Corbin Motor Lodge*. While the two may appear to be in conflict, we think they are distinguishable. Notably, in *Corbin Motor Lodge* the obviousness of the natural hazard was conclusively established by a severe winter storm apparently then occurring or just concluding. Additionally, the hazard was obvious because Combs had walked across the parking lot and sidewalk upon entering the restaurant, which was in the same condition as when he fell upon exiting the restaurant. By contrast, according to Schreiner's deposition, she was unaware of a transparent layer of ice on the seemingly cleared sidewalk until she stepped upon it, even though she was aware of the generally icy and snowy conditions then existing. As a result, based upon the facts in *Schreiner*, unlike *Corbin Motor Lodge*, there was an issue regarding the obviousness of the natural hazard, which precluded summary judgment. Consequently, we

---

1. Saul's citation to *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Smith v. Food Concepts, Inc.*, Ky.App., 758 S.W.2d 437 (1988), is therefore, clearly inappropriate.

find *Corbin Motor Lodge* to be distinguishable from *Schreiner* and from the Esteps' case.

Since there is a genuine issue of fact relating to the parties knowledge of the ice, summary judgment was not appropriate. Therefore, we must reverse and remand. However, we will also consider the other issues raised by the Esteps in the event it is ultimately determined that *Schreiner* is not distinguishable.

■ The Esteps assert that the rule in *Standard Oil* should be modified in accordance with the Restatement (Second) of Torts § 343A (1965), which provides that an owner or occupier of land can be liable for known or obvious dangerous conditions, such as ice and snow, if he should anticipate that his invitees will still proceed despite such knowledge or obviousness. We note that there is significant out-of-jurisdiction support for his position, as well as some notable arguments within our jurisprudence.[2] However, we are bound to follow *Standard Oil, supra,* and *Corbin Motor Lodge, supra,* unless they are distinguishable. SCR 1.030(8). As a result, we must decline to modify the rule announced in *Standard Oil.*

On the other hand, there are other significant distinctions between this case and earlier precedents. Notably, in this instance, Saul or McAlpins, or whomever they hired, undertook to clear, and perhaps salt, the parking lot and sidewalk in an effort to make it safe for the customers of McAlpins and the mall. While there was some effort to clear in *Standard Oil,* the question of assumption of duty was not raised. In *Corbin Motor Lodge,* the defendant apparently made no effort to remove any ice or snow, but left the sidewalk in its pristine condition. Consequently, we do not find *Standard Oil* and its progeny to be controlling.

■ Instead, we note the well-known rule that a duty voluntarily assumed cannot be carelessly undertaken without incurring liability therefore. *Louisville Cooperage Co. v. Lawrence,* 313 Ky. 75, 230 S.W.2d 103, 105 (1950). In this case, Saul and McAlpins opted to attempt to clear their lot and sidewalks of ice and snow, presumably to attract more customers. Since they chose to so act, they must act in a reasonable manner or be liable for their failure. *Id.; see also Webb v. Morgan,* 176 Ill.App.3d 378, 125 Ill.Dec. 857, 531 N.E.2d 36 (1988), which held an owner cannot be held liable for a natural accumulation of snow, but when an owner chooses to remove ice and snow, he must act reasonably; *Accord Smith v. Fraternal Order of Eagles,* 39 Ohio App.3d 97, 529 N.E.2d 477 (1987). The question of whether they acted reasonably is a classic jury question, which

**2.** The Esteps have cited us to five such cases, which are as follows: *Woods v. Prices Corner Shopping Merchants Association,* 541 A.2d 574 (Del.Super.Ct.1988); *Kuykendall v. Newgent,* 255 Ark. 945, 504 S.W.2d 344 (1974); *Proctor v. Waxler,* 84 N.M. 361, 503 P.2d 644 (1972); *Kremer v. Carr's Food Center, Inc.,* 462 P.2d 747 (Alaska 1969); and *Dawson v. Payless For Drugs,* 248 Or. 334, 433 P.2d 1019 (1967). An unscientific plunge into the depths of WestLaw disclosed additional authority, as follows: *Carnes v. Weesner,* 229 Neb. 641, 428 N.W.2d 493 (1988), which expressly followed the Restatement (Second) of Torts § 343A comment f (1965); *Get–N–Go, Inc. v. Markins,* 544 N.E.2d 484 (Ind.1989), which held that a business open to the public had a continuing duty to its customers, which was not extinguished by the customers knowledge of the potential risks of ice and snow; *Get–N–Go, Inc. v. Markins,* 550 N.E.2d 748 (Ind.1990), which further held, on petition for rehearing, that the duty of an invitor to exercise reasonable care for the safety of his invitees is an active and continuing duty, which does not cease simply because the invitee learns of an unsafe condition on the premises; and *Bauer v. City of Garden City,* 139 Mich.App. 354, 362 N.W.2d 280 (1984), which held that owners of shopping centers had a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation; *see also Agnew v. Dillons, Inc.,* 16 Kan.App.2d 298, 822 P.2d 1049 (1991), which absolved a store of liability since the fall occurred before the end of the storm, but indicated liability would arise if reasonable efforts were not undertaken to remove ice or snow within a reasonable time after the storm ended; *Accord Newsome v. Cservak,* 130 A.D.2d 637, 515 N.Y.S.2d 564 (1987). The Kentucky authority is contained in *Ashcraft v. People's Liberty Bank & Trust Co., Inc.,* Ky.App., 724 S.W.2d 228 (1987) (Miller, J., concurring); and *Corbin Motor Lodge, supra,* (Lambert, J., dissenting).

precludes summary judgment.[3] Moreover, the current record contains nothing on the issue beyond the Esteps' allegations. These allegations are sufficient, at this stage of the proceedings, to survive a motion for summary judgment, since it is not impossible for the Esteps to prevail at trial. *Steelvest, supra.* As a result, we must also reverse the summary judgment granted to Saul and McAlpins on the assumption of duty issue.

■ The last issue concerns a local ordinance, which mandates ice and snow removal. *See* Lexington–Fayette Urban County Government, Ky., Ordinance, § 17–31 (1979). Based thereon, the Esteps argue that Saul and McAlpins were negligent *per se. See Wemyss v. Coleman,* Ky., 729 S.W.2d 174 (1987). However, we do not think *Schilling v. Schoenle,* Ky., 782 S.W.2d 630 (1990), is distinguishable.

There, it was held that an ordinance requiring owners to keep sidewalks in good repair and free of snow and ice did not impose any liability upon an owner to a pedestrian, who fell on a defect in the sidewalk hidden by accumulated snow. *Schilling,* 782 S.W.2d, at 633. As a result, we must reject the Esteps argument.

For the reasons set forth above, we reverse the judgment of the Fayette Circuit Court, and remand for proceedings consistent with this opinion.

All concur.

---

3. We do not comment upon the merits of the Esteps' claim, since that is not our province. The proof at trial may well show Saul and McAlpins did everything they reasonably could in clearing the ice and snow. *See, e.g., Martin v. Safeway Stores Incorporated,* 565 P.2d 1139, 1140–41 (Utah 1977), where it was held the defendant store had its duty to keep the sidewalk reasonably safe by shoveling the snow and salting the sidewalk at 2:00 p.m. and 5:00 p.m., when the plaintiff slipped and fell at 9:30 p.m., after the store closed, on an icy spot no more than twelve by fourteen inches; and *Wynne v. Spainhour,* 215 Va. 16, 205 S.E.2d 634, 635 (1974), which held an owner was not negligent, as a matter of law, where the owner had scraped the snow off his parking lot shortly after a snowstorm and continued periodically to apply salt thereafter to any remaining icy patches. All we have done is determine that the Esteps' claim cannot be resolved by way of summary judgment.

We also point out that we do not want to discourage mall owners and tenants from acting responsibly in clearing ice and snow for the benefit of their customers, but only to encourage them to do so in a reasonable and safe manner. As we noted earlier, the current record is essentially devoid of evidence on this issue.

All of the above goes to show that *Standard Oil* may need to be "revisited," at least with regard to modern shopping malls, which are vastly different from the bulk gasoline distributorship at issue in *Standard Oil.* First, a distributor does not hold himself open to the general public. Second, and perhaps more importantly, whatever motives a distributor might have for clearing ice and snow, they are not to entice his customers to do business with him by creating at least an aura of safety, which is the motivation for a mall to clear. *See Ashcraft, supra* (Miller, J., concurring).