SCOTT AND WHITE MEMORIAL HOSPITAL and Scott, Sherwood and Brindley Foundation, Petitioners,

v.

Gary FAIR and Linda Fair, Respondents.

No. 08–0970.

Supreme Court of Texas.

Argued Dec. 15, 2009.

Decided May 7, 2010.

Rehearing Denied June 11, 2010.

Stuart Smith, Naman Howell Smith & Lee LLP, Waco, TX, Bruce Burleson, Attorney at Law, Belton, TX, for Petitioner.

Richard E. Brophy Jr., Frederick deB. Bostwick III, Julia Brooks Jurgensen, Beard Kultgen Brophy Bostwick Dickson & Squires, Waco, TX, for Respondent.

Bruce Burleson, Attorney at Law, Belton, TX, for other interested parties.

Chief Justice JEFFERSON delivered the opinion of the Court.

In this premises liability case, we must decide whether ice that accumulates naturally outside a business due to a winter storm poses an unreasonable risk of harm. Because we hold that it does not, we reverse in part the court of appeals' judgment and render judgment that the respondents take nothing.

I

**Factual and Procedural Background**

Gary Fair drove his wife to a doctor's appointment at Scott and White Memorial

Hospital the morning after a winter storm. The Fairs walked through the parking lot, across the roadway separating the parking lot from the hospital, and next to a set of stairs leading to the building. There was ice in the parking lot, on the road, and on the steps. After the appointment, Fair left the building to retrieve his car while his wife waited inside. Fair slipped and fell on the road that separated the hospital from the parking lot. The Fairs sued Scott and White Memorial Hospital and Scott, Sherwood and Brindley Foundation[1] (Scott and White) for damages arising from injuries Fair sustained in the fall.

Scott and White moved for summary judgment, asserting that the accumulated ice did not pose an unreasonable risk of harm. The trial court granted Scott and White's motion and rendered judgment that the Fairs take nothing.[2]

The court of appeals reversed, holding that Scott and White failed to "conclusively establish that the ice accumulation was in its natural state and was not an unreasonably dangerous condition." 2008 Tex.App. LEXIS 4277, at *11. We granted Scott and White's petition for review, 52 Tex. Sup.Ct. J. 1133, 1140 (Aug. 21, 2009), and now reverse.

## II

### Discussion

#### A. Naturally accumulated ice does not pose an unreasonable risk of harm.

■ In a premises liability action, the duty owed by a premises owner depends on the plaintiff's status. In this case, the parties agree that the Fairs were invitees. 2008 Tex.App. LEXIS 4277, at *5. Thus, Scott and White owed a duty "to exercise reasonable care to protect against danger from a condition on the land that creates an unreasonable risk of harm of which the owner or occupier knew or by the exercise of reasonable care would discover." *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex.2000). Scott and White asserts that the naturally accumulated ice on its premises did not pose an unreasonable risk of harm to invitees. We agree.

On several prior occasions, we have addressed whether certain naturally occurring conditions create unreasonable risks of harm. We have held that dirt in its natural state does not pose such a risk. *See Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 287 (Tex.1996) ("The natural state of dirt, that it may be slippery when wet or may contain small rocks, can present a hazard under the right conditions, but not unreasonably so.... [D]irt containing small rocks is not an unreasonably dangerous condition for which a landlord may be held liable...."); *Brownsville Navigation Dist. v. Izaguirre*, 829 S.W.2d 159, 160–61 (Tex.1992) ("Plain dirt which ordinarily becomes soft and muddy when wet is not a dangerous condition of property for which a landlord may be liable."). More recently, we held that "[o]rdinary mud that accumulates naturally on an outdoor concrete slab without the assistance or involvement of unnatural contact is, in normal circumstances, nothing more than dirt in its natural state and, therefore, is not a condition posing an unreasonable risk of harm." *M.O. Dental*

1. Scott and White states that "[w]hile the name of the Petitioner gives the appearance that it is two entities, it is actually a single entity." The Fairs also sued "Scott and White Memorial Hospital" and Scott and White Properties, Inc.; however, the Fairs have not challenged the portion of the court of appeals' judgment affirming summary judgment as to those parties.

2. The Fairs also moved for summary judgment, which the trial court denied. The Fairs did not challenge that ruling.

*Lab v. Rape*, 139 S.W.3d 671, 676 (Tex. 2004) (per curiam). We recognized that holding a landowner accountable for naturally accumulated mud would impose a heavy burden because rain, a cause of mud, is beyond a premises owner's control. *Id.* Further, mud-induced accidents are likely to occur regardless of precautions taken by landowners, and invitees are often better positioned to avoid the dangers associated with muddy walkways. *Id.* Thus, because the mud in *M.O. Dental* accumulated due to rain and remained in its natural state, it was not a condition that posed an unreasonable risk of harm. *Id.*

Numerous courts of appeals have applied *M.O. Dental*'s holding to premises liability cases involving other naturally occurring conditions, including ice,[3] and have consistently concluded that naturally formed ice is not an unreasonably dangerous condition for premises liability purposes. *See, e.g., Almazon v. Amli Residential Props. Ltd. P'ship*, No. 03–08–00297–CV, 2009 WL 4456141, at *3, 2009 Tex.App. LEXIS 9266, at *7–*8 (Tex.App.-

Austin Dec. 3, 2009, no pet.) (mem.op.). And, many have found no significant distinction between naturally occurring ice and naturally occurring mud. *See Gagne v. Sears, Roebuck & Co.*, 201 S.W.3d 856, 858 (Tex.App.-Waco 2006, no pet.); *Griffin v. 1438, Ltd.*, No. 02–03–255–CV, 2004 Tex. App. LEXIS 6403, at *9 (Tex.App.-Fort Worth July 15, 2004, no pet.) (mem.op.); *see also Almazon*, 2009 WL 4456141, at *1–2, 2009 Tex.App. LEXIS 9266, at *3–*4 (finding the rule for naturally occurring substances, such as mud, ice, and slime, to be the same); *Haney v. Jerry's GM, Ltd.*, —— S.W.3d ——, ——–—— (Tex.App.-El Paso 2009, no pet.) (emphasizing the *Gagne* court's analysis); *Wal–Mart Stores, Inc. v. Surratt*, 102 S.W.3d 437, 443–44 (Tex.App.-Eastland 2003, pet. denied) (citing the dirt cases as support). Before today, we have never addressed whether naturally occurring ice poses an unreasonable risk of harm.

The Fairs argue that ice should be treated differently from mud because, unlike mud, icy conditions occur rarely in Texas.

**3.** *See Almazon v. Amli Residential Props. Ltd. P'ship*, No. 03–08–00297–CV, 2009 WL 4456141, at *1–2, *3, 2009 Tex.App. LEXIS 9266, at *3–4, *7 (Tex.App.-Austin Dec. 3, 2009, no pet.) (mem.op.) ("[T]he natural accumulation of ice-is not unreasonably dangerous for purposes of premises liability."); *Smith v. Shofner Auto Repair, Inc.*, No. 02–08–285–CV, 2009 WL 975999, at *1, *2, 2009 Tex.App. LEXIS 2658, at *4 n.8 and *5 (Tex.App.-Fort Worth Apr. 9, 2009, no pet.) (mem.op.) ("[N]aturally-occurring ice in a parking lot does not constitute an unreasonably dangerous condition under the law...."); *Haney v. Jerry's GM, Ltd.*, —— S.W.3d ——, ——–—— (Tex.App.-El Paso 2009, no pet.) ("[N]aturally forming ice is not an unreasonably dangerous condition that would impose liability on a premises owner/operator."); *Eubanks v. Pappas Rests., Inc.*, 212 S.W.3d 838, 840 (Tex. App.-Houston [1st Dist.] 2006, no pet.) (holding that slime, composed of topsoil, leaves, and grass, is not an unreasonably dangerous condition); *Gagne v. Sears, Roebuck & Co.*,

201 S.W.3d 856, 858 (Tex.App.-Waco 2006, no pet.) ("[W]e hold that the natural accumulation of ice on a sidewalk near the entrance of a business does not pose an unreasonable risk of harm to invitees."); *Tex. Dep't of Transp. v. Martinez*, No. 04–04–00867–CV, 2006 WL 1406571, at *5–6, 2006 Tex.App. LEXIS 4420, at *18–*19 (Tex.App.-San Antonio May 24, 2006, pet. denied) (deciding that the slippery road condition caused by rain is not a condition posing an unreasonable risk of harm); *Griffin v. 1438, Ltd.*, No. 02–03–255–CV, 2004 Tex.App. LEXIS 6403, at *9–*10 (Tex.App.-Fort Worth July 15, 2004, no pet.) (mem.op.) (a premises owner does not owe a duty to protect an invitee "from the natural accumulation of frozen precipitation on its parking lot"); *see also Wal–Mart Stores, Inc. v. Surratt*, 102 S.W.3d 437, 445 (Tex. App.-Eastland 2003, pet. denied) (decided before *M.O. Dental*, holding naturally frozen precipitation does not constitute an unreasonably dangerous condition).

We see no basis for such a distinction. Both conditions pose the same risk of harm, and ice, like mud, results from precipitation beyond a premises owner's control. Further, invitees "are at least as aware as landowners of the existence of [ice] that has accumulated naturally outdoors and will often be in a better position to take immediate precautions against injury." *M.O. Dental*, 139 S.W.3d at 676; *see also State Dep't of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex.1993) (per curiam) ("When there is precipitation accompanied by near-freezing temperatures . . . [ice] is neither unexpected nor unusual, but rather entirely predictable. . . . [A]n icy bridge is something motorists can and should anticipate when the weather is conducive to such a condition."). As other jurisdictions have recognized:

> The magnitude of the burden on [the] defendant to prevent injuries from snow or ice is great. . . . [N]atural winter conditions make it impossible to prevent all accidents. The plaintiff is in a much better position to prevent injuries from ice or snow because the plaintiff can take precautions at the very moment the conditions are encountered.

*Eiselein v. K–Mart, Inc.*, 868 P.2d 893, 898 (Wyo.1994).[4]

Ice in Texas may occur less frequently than mud, but frequency is only one of many factors relevant to our analysis. And, the relative irregularity of icy conditions in this state may weigh against imposing liability. Requiring premises owners to guard against wintery conditions would inflict a heavy burden because of the limited resources landowners likely have on hand to combat occasional ice accumulations. *See Surratt*, 102 S.W.3d at 443 ("[A] premises owner/operator [will be required] to expend a great deal of physical and financial effort to protect its invitees from a naturally occurring condition which usually disappears on its own in a short period of time."); *cf. Geise v. Lee*, 84 Wash.2d 866, 529 P.2d 1054, 1056 (1975) (imposing liability in a state accustomed to snow and ice because landlords are already " 'armed with an ample supply of salt, sand, scrapers, shovels and even perhaps a snow blower' " (quoting *Fuller v. Hous. Auth. of Providence*, 108 R.I. 770, 279 A.2d 438, 440 (1971))). Because we find no reason to distinguish between the mud in *M.O. Dental* and the ice in this case, we hold that naturally occurring ice that accumulates without the assistance or involvement of unnatural contact is not an unreasonably dangerous condition sufficient to support a premises liability claim.

---

**4.** *See also Kellermann v. Car City Chevrolet– Nissan*, 306 Ill.App.3d 285, 239 Ill.Dec. 435, 713 N.E.2d 1285, 1289 (1999) ("[S]now and ice is a hazard . . . known to all. . . . [I]t [is] an unreasonable burden for a business to keep . . . parking lots, sidewalks, and entryways safe from naturally accumulated snow and ice. . . ."); *Standard Oil Co. v. Manis*, 433 S.W.2d 856, 859 (Ky.1968) ("[T]he hazard faced by [invitee] was created by natural elements. It was outside, and exposed in broad daylight. . . . [Invitee] was fully aware of the accumulation of ice and snow in the area."); *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589, 592 (1968) ("The danger from ice and snow is an obvious danger and an occupier of premises should expect that an invitee on his premises will discover and realize that danger and protect himself against it."); *Cooper v. Valvoline Instant Oil Change*, No. 07AP– 392, 2007 WL 3257245, at *8–9, 2007 Ohio App. LEXIS 5189, at *23–*24 (Ohio Ct.App. Nov. 6, 2007) (" '[I]t is assumed that reasonable individuals will understand that winter conditions can create dangers from ice and snow, and individuals will take the necessary precautions.' "); 62A AM. JUR. 2D *Premises Liability* § 656 (2005) ("[T]he danger from ice and snow . . . is an obvious one, and the occupier of the premises may expect that an invitee on his or her premises will discover and realize the danger and protect himself or herself.").

## B. Scott and White established that the ice was in its natural state.

 Generally, "a natural accumulation of ice ... is one which accumulates as a result of an act of nature," *Coletta v. Univ. of Akron*, 49 Ohio App.3d 35, 550 N.E.2d 510, 512 (1988), whereas an " '[u]nnatural' accumulation ... refer[s] to causes and factors *other than* the inclement weather conditions ... *i.e.*, to causes other than the meteorological forces of nature," *Porter v. Miller*, 13 Ohio App.3d 93, 468 N.E.2d 134, 136 (1983).[5] Here, the court of appeals reversed the trial court's judgment because it concluded that Scott and White did not "conclusively establish that the ice accumulation was in its natural state." 2008 Tex.App. LEXIS 4277, at *11. We disagree.

The summary judgment evidence, which includes affidavits from a local meteorologist and the Scott and White grounds supervisor and deposition testimony from Fair, shows that an ice storm hit the Temple area causing ice to accumulate on the Scott and White grounds, including the road where Fair fell. The court of appeals discounted the testimony of Scott and White's grounds supervisor, Melissa Frei, which detailed the impact of the winter storm on the hospital property. Specifically, the court of appeals determined that "Frei's affidavit [could not] support summary judgment with regard to whether the

ice accumulations ... were in their natural state" because Frei's deposition testimony revealed that she was not at the scene when Fair's accident occurred nor called to the scene following the accident. *Id.* at *10. But such testimony does not controvert Frei's personal knowledge of ice accumulations on the hospital grounds. Frei personally observed the winter storm and the resultant ice accumulations on the Scott and White grounds, including on the road in front of the Special Treatment Center (where Fair fell). This, together with the local meteorologist's testimony and Fair's deposition testimony stating that an ice storm occurred in the area the night prior to his fall and that ice was present on the road where he fell, satisfies Scott and White's summary judgment burden. Furthermore, the Fairs did not present any controverting evidence (or even suggest) that the ice resulted from something other than the winter storm. Thus, the ice in this case accumulated naturally and did not pose an unreasonable risk of harm necessary to sustain the Fairs' premises liability action.

## C. Neither exception asserted by the Fairs applies.

The Fairs propose two exceptions to the natural accumulation rule and assert there is evidence to support both. They first contend that a premises owner should be

---

5. Texas court of appeals draw this distinction as well. *See Almazon*, 2009 WL 4456141, at *3, 2009 Tex.App. LEXIS 9266, at *7 (ice accumulating from frozen precipitation was natural, not man-made); *Smith*, 2009 WL 975999, at *1–2, 2009 Tex.App. LEXIS 2658, at *4–*5 (ice resulting from a winter storm is naturally occurring); *Haney*, —— S.W.3d at ——-––— (same); *Gagne*, 201 S.W.3d at 856, 858 (same); *Griffin*, 2004 Tex.App. LEXIS 6403, at *9–*10 (distinguishing a case involving ice created by a leaking vending machine because it was not a natural accumulation); *Surratt*, 102 S.W.3d at 439 (ice is a natural accumulation when caused by an ice storm); *Furr's, Inc. v. Logan*, 893 S.W.2d 187, 189, 191–92 (Tex.App.-El Paso 1995, no writ.) (unnatural ice accumulation caused by leaking vending machine could support a premises liability action); *see also Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 409 (Tex.2006) (ice on the floor from a soft drink dispenser was not naturally occurring and could be an unreasonably dangerous condition); *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 676 (Tex.2004) (mud created by falling precipitation was natural).

liable when it has "actual or implied notice that a natural accumulation of ice or snow on his property created a condition substantially more dangerous than a business invitee should have anticipated by reason of knowledge of the conditions generally prevailing in the area." *Cooper v. Valvoline Instant Oil Change*, No. 07AP–392, 2007 WL 3257245, at *5, 2007 Ohio App. LEXIS 5189, at *14 (Ohio Ct.App. Nov. 6, 2007). Second, the Fairs assert that the natural accumulation rule does not apply when a landowner is "actively negligent in permitting or creating an unnatural accumulation of ice or snow." *Id.* 2007 WL 3257245, at *5–6, 2007 Ohio App. LEXIS 5189, at *15. Assuming, without deciding, that these exceptions are cognizable under

Texas law, there is no evidence to support either one.[6]

Regarding the first exception, the Fairs argue that Scott and White's use of a deicer, "Meltz," made the ice slipperier, thereby creating "a condition substantially more dangerous than a business invitee should have anticipated." *Id.* 2007 WL 3257245, at *5, 2007 Ohio App. LEXIS 5189, at *14. We reject this argument. In *Cooper*, the case relied on by the Fairs, the court explained that this exception applies only in situations where the ice or snow conceals a defect or hazard that an invitee should not anticipate from his general knowledge of wintery conditions in the area. *Id.* 2007 WL 3257245, at *7–8, 2007 Ohio App. LEXIS 5189, at *19–*21. For

**6.** Other jurisdictions, which have adopted a similar liability rule with respect to natural accumulations of ice and snow, recognize additional exceptions to the ones asserted by the Fairs in this case. *See, e.g., Reed v. Galaxy Holdings, Inc.*, 394 Ill.App.3d 39, 333 Ill.Dec. 213, 914 N.E.2d 632, 636–37 (2009) ("[P]roperty owners and business operators may be liable for injuries resulting from an accumulation of ice, water, or snow if a plaintiff establishes that the means of ingress or egress was unsafe for any reason other than a natural accumulation of ice, water, or snow."); *Judge–Zeit v. Gen. Parking Corp.*, 376 Ill. App.3d 573, 314 Ill.Dec. 922, 875 N.E.2d 1209, 1216 (2007) ("[A] contract to remove snow creates a duty to remove even natural accumulations of snow."); *Wells v. Great Atl. & Pac. Tea Co.*, 171 Ill.App.3d 1012, 121 Ill.Dec. 820, 525 N.E.2d 1127, 1131 (1988) ("[A] voluntary undertaking to remove snow and ice may subject the landowner to liability if the removal is performed negligently."); *Stapleton v. Citizens Nat'l Corp.*, No.2009–CA–000264–MR, 2010 WL 323284, at *2–3, 2010 Ky.App. Unpub. LEXIS 81, at *5–*6 (Ky.Ct. App. Jan.29, 2010) (an exception exists "when the owner undertakes protective measures that *heighten or conceal* the nature of the naturally-occurring condition, thus making it worse"); *Willis v. Springfield Gen. Osteopathic Hosp.*, 804 S.W.2d 416, 421–22 (Mo.Ct.App. 1991) (a landlord or an invitor "may become obligated either by agreement or a course of conduct over a period of time to remove snow and ice from common areas, thereby assuming a duty to exercise ordinary care to remove the snow and ice to make the common area reasonably safe." (internal quotations omitted)); *Maschoff v. Koedding*, 439 S.W.2d 234, 236 (Mo.Ct.App.1969) (an exception arises when "it [is] shown that although the landlord did not expressly agree to perform the duty of removal, he obligated himself to do so by his course of conduct over a period of time"); *see also* 62A Am.Jur. 2d *Premises Liability* § 657 ("In some jurisdictions, the traditional rule . . . has been modified to some extent, the courts holding that the owner of a business has a duty to remove natural accumulations of ice and snow which he or she knows or should know created a condition substantially more dangerous to his or her business invitees than they could reasonably have anticipated from their knowledge of weather conditions prevailing generally in the area, or from their knowledge of the terrain, or that the property owner or tenant has a duty to act within a reasonable time after notice to remove snow and ice when it accumulates in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon." (footnotes omitted)). However, because none of these exceptions are at issue here, we express no opinion on their viability under Texas law.

instance, the exception would arise when accumulated snow or ice covers a normally open and obvious danger, such as a deep hole in a parking lot or an eight-inch raised concrete bumper. *Id.* 2007 WL 3257245, at *7–8, 2007 Ohio App. LEXIS 5189, at * 19–*20 (citing *Mikula v. Tailors,* 24 Ohio St.2d 48, 263 N.E.2d 316, 322 (1970) and *Koss v. Cleveland Holding Corp.,* No. 34111, 1975 WL 182913, at *2, 1975 Ohio App. LEXIS 6565, at *5 (Ohio Ct.App. July 10, 1975)); *see also Weaver v. Standard Oil Co.,* 61 Ohio App.3d 139, 572 N.E.2d 205, 207 (1989) (whether ice that covered a recessed steel plate in a gas station lot created a condition substantially more dangerous was a question for the jury). Here, however, there is no evidence that the ice concealed any dangerous condition beneath it. In fact, the hazard complained of by the Fairs is the slipperiness of the ice itself. Such a danger is one that is normally associated with ice, one that Fair was clearly aware of, and one not substantially more dangerous than should be anticipated. *See Cooper,* 2007 WL 3257245, at *8, 2007 Ohio App. LEXIS 5189, at *21 (when the hazard is "simply the slippery nature of the ice on the sidewalk," a substantially more dangerous condition than is normally associated with ice and snow is not created); *Nolan v. Kroger Co.,* No. 93OT026, 1993 WL 496697, at *1– 2, 1993 Ohio App. LEXIS 5722, at *3–*4 (Ohio Ct.App. Dec. 3, 1993) ("Injuries resulting from the failure to remove the snow and ice are not compensable when the injury resulted from the slippery nature of snow and ice. When the injuries result from ... [ice's] propensity to conceal that which lies beneath it, then an exception to the general rule of non-liability occurs.").

Further, the application of a deicer does not create a substantially more dangerous condition. In this case, the grounds supervisor testified that Meltz was used once the evening before Fair's accident when conditions first became icy, but does not indicate where on the hospital grounds Meltz was applied. Scott and White's written procedures manual for handling ice accumulations states that employees should "[a]pply the material Meltz to sidewalks and steps at [certain] locations," including the "[f]ront entrance" of the Special Treatment Center. Assuming that deicer was applied to the ice on the street where Fair slipped, a concealed danger still was not created. " 'The spreading of de-icing materials on certain portions of a parking lot will, as a matter of law, neither create a hidden danger nor impute superior knowledge thereof to a property owner.' " *Klein v. Ryan's Family Steak House,* No. 20683, 2002 WL 1022974, at *3–4, 2002 Ohio App. LEXIS 2335, at *10 (Ohio Ct.App. May 15, 2002) (quoting *Goodwill Indus. of Akron, Ohio, Inc. v. Sutcliffe,* No. 19972, 2000 WL 1288057, at *3–4, 2000 Ohio App. LEXIS 4131, at * 11–*12 (Ohio Ct.App. Sept. 13, 2000)). Thus, the Fairs have not raised a fact issue as to whether the naturally accumulated ice on which Fair slipped created a substantially more dangerous condition than an invitee should reasonably have anticipated from his knowledge of the inclement winter weather in the area.[7]

There is no fact issue with respect to the second exception either. As to this exception, the Fairs assert that Scott and White negligently applied the Meltz, causing the ice to refreeze, and thereby creating an unnatural accumulation. The Ohio cases

---

7. Because we find that the ice did not create a substantially more dangerous condition than an invitee would normally anticipate, we do not reach whether Scott and White had actual or implied notice of such a condition. *See Cooper,* 2007 WL 3257245, at *5, 2007 Ohio App. LEXIS 5189, at *14 (setting forth the elements of the exception).

on which the Fairs rely for support distinguish between natural and unnatural accumulations of ice by defining an unnatural accumulation as one that entails "causes and factors *other than* the inclement weather conditions of low temperature, strong winds and drifting snow." *Porter*, 468 N.E.2d at 136. Here, it is uncontested that the source of the ice was a winter storm. Therefore, for the Fairs to prevail under this exception, application of the deicer would have to convert the natural accumulation into an unnatural one. Because the deicer is composed of a salt-like compound, we look to other jurisdictions for guidance regarding whether application of salt to a natural accumulation of ice renders the ice no longer natural.

To support their position, the Fairs direct the Court to *Estep v. B.F. Saul Real Estate Investment Trust*, 843 S.W.2d 911 (Ky.Ct.App.1992), a Kentucky case in which the plaintiff fell on ice and snow outside a shopping mall. *Estep*, 843 S.W.2d at 912. In that case, the evidence showed that the parking lot had been scraped and the snow piled, but it was unclear whether salt had been applied. *Id.* at 912–14. Although the Kentucky Supreme Court had previously held that "*natural outdoor hazards* which are as obvious to an invitee as to the owner of the premises do not constitute *unreasonable* risks to the former which the landowner has a duty to remove or warn against," *Standard Oil Co. v. Manis*, 433 S.W.2d 856, 858 (Ky.1968), the *Estep* court concluded that when a premises owner attempts to clear its lot of ice and snow, it must do so reasonably or be subject to liability. *Estep*, 843 S.W.2d at 914–15. And, whether the premises owner acted reasonably is a question for the jury. *Id.*

The Fairs' reliance on *Estep* is misplaced. In *Estep*, there was no evidence that salt was applied to the snow and ice during clearing of the parking lot, and the plaintiff did not argue that the premises owner was liable because the ice on which the plaintiff fell was unnatural. Instead, the plaintiff contended that the ice was not an obvious natural hazard; the issue of whether the ice was unnatural was never discussed. Here, the question before us is whether natural ice becomes unnatural when deicer is applied. Consequently, we are unpersuaded that *Estep* is relevant to our analysis.

Notably, an examination of Ohio jurisprudence, which developed the exception on which the Fairs rely, reveals that "[s]alting or shoveling [ice or snow] does not turn a natural accumulation into an unnatural accumulation," and even the application of a chemical deicer to a natural accumulation of ice does not render the ice unnatural. *Cunningham v. Thacker Servs., Inc.*, No. 03AP–455, 2003 WL 22681389, at *4, 2003 Ohio App. LEXIS 5398, at *10 (Ohio Ct.App. Nov. 13, 2003); *Gyulay v. Rolling Acres Mgmt. Inc.*, No. 10356, 1982 WL 5032, at *1–2, 1982 Ohio App. LEXIS 11507, at *4–*5 (Ohio Ct.App. June 2, 1982). Furthermore, ice that melts and later refreezes is still deemed a natural accumulation. *See Kaeppner v. Leading Mgmt., Inc.*, No. 05AP–1324, 2006 WL 1932327, at *5, 2006 Ohio App. LEXIS 3523, at *14 (Ohio Ct.App. July 13, 2006).

Again, assuming that deicer was applied to the ice on the road where Fair slipped,[8] the Fairs still cannot prevail under this proposed exception. The Fairs assert that Scott and White's negligent deicing caused the ice to refreeze, rendering it unnatural. But, "the mere fact that [a premises own-

---

8. There is some evidence that Scott and White applied sand to the road where Fair fell, however, the Fairs do not complain that Scott and White was negligent in sanding the road or that the sanding created an unnatural accumulation of ice.

er] salted the sidewalk and then allowed the sidewalk to freeze again does not turn the natural accumulation of snow and ice into an accumulation that is unnatural." *Lehman v. Cracker Barrel Old Country,* No.2004–CA–0048, 2005 WL 267658, at \*4, 2005 Ohio App. LEXIS 351, at \*11 (Ohio Ct.App. Jan. 28, 2005). In other words, salting, shoveling, or applying deicer to a natural ice accumulation does not transform it into an unnatural one. To find otherwise would punish business owners who, as a courtesy to invitees, attempt to make their premises safe. *See Cunningham,* 2003 WL 22681389, at \*4, 2003 Ohio App. LEXIS, at \*10. Because there is no evidence that Scott and White's actions made the ice accumulation unnatural, the second exception urged by the Fairs does not apply.

## III

### Conclusion

A condition on a premises owner's property, like a natural accumulation of ice or mud, certainly poses a risk but, as a matter of law, does not present an unreasonable risk of harm. We reverse in part the court of appeals' judgment and render judgment that the Fairs take nothing. TEX.R.APP. P. 60.2(c).