# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00271-CV

**Cynthia Walker, Individually and on Behalf of the Estate of Norman Walker; Stephen Walker; Stephanie Walker Hatton; Jordan Walker; and Caren Ann Johnson, Appellants**

**v.**

**UME, Inc. d/b/a Camp Huaco Springs; WWGAF, Inc. d/b/a Rockin 'R' River Rides; William George Rivers; and Richard Duane Rivers, Appellees**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 433RD JUDICIAL DISTRICT NO. C2012-0796D, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Cynthia Walker, Individually and on Behalf of the Estate of Norman Walker; Stephen Walker; Stephanie Walker Hatton; Jordan Walker; and Caren Ann Johnson[1] filed suit against appellees UME, Inc. d/b/a Camp Huaco Springs; WWGAF, Inc. d/b/a Rockin 'R' River Rides; William George Rivers; and Richard Duane Rivers for injuries sustained when the Guadalupe River overran its banks during a flash flood in June 2010.[2] The trial court granted summary judgment in favor of appellees. We affirm the trial court's orders granting summary judgment.

---

[1] Cynthia Walker was married to Norman Walker, and Stephen Walker, Stephanie Walker Hatton, and Jordan Walker are their children. Caren Johnson is married to Terry Johnson, Cynthia's brother. Cynthia, Norman, Caren, and Terry were camping together at Camp Huaco Springs when they were caught in the flood. Norman died, while Cynthia, Terry, and Caren were injured. Caren and Cynthia sued for their own injuries. Cynthia also sued as a representative of Norman's estate and, along with her children, as a wrongful death beneficiary.

[2] UME, Inc. operates Camp Huaco Springs, WWGAF operates Rockin 'R' River Rides, a river-tubing and recreation outfitter, and William and Richard Rivers own the two businesses.

## Factual Summary

In June 2010, Cynthia and Norman Walker and Terry and Caren Johnson went to Camp Huaco Springs in their RV campers for a weekend of camping and river rafting. When they arrived at the campground, they were assigned two parking spaces. The Walkers and the Johnsons parked their campers as directed. On Saturday, the Walkers and the Johnsons took a canoe trip on the river and went to tour nearby caverns. When they returned to the campsite and went to bed, it was not raining. They had not heard any weather reports and did not know heavy rain was forecast for that night. Cynthia woke at about 6:00 a.m. to thunder and lightning. She looked out the window and saw Terry was screaming that they had to leave. Cynthia looked down and noticed that the river had risen to surround the two campers, causing them to begin floating. The Walkers and Johnsons were all swept downstream in the flood. Norman died in the flood. Cynthia, Terry, and Caren were rescued miles downstream from the campsite and all required medical attention.

Appellants filed suit alleging negligence, premises liability, and gross negligence. They asserted that WWGAF was liable because it was a joint enterprise with UME and that the Rivers brothers were liable under a theory of alter ego. Appellants asserted that appellees knew that the campground was prone to flooding and failed: to warn appellants of that fact; to warn of the approaching storm; to prepare a plan for flood awareness, communication, and evacuation; to have and use speakers or sirens to warn of flooding; to employ someone to monitor the weather and warn and evacuate guests; to have an employee on site during severe weather; and to make reasonable modifications, have emergency communications, or educate guests about severe-weather risks.

UME and the Rivers brothers filed a traditional and no-evidence motion for summary judgment, asserting that the Texas Recreational Use Statute[3] limited appellants to asserting a gross-negligence claim and that appellants could not show various elements of gross negligence; that there was no evidence that they had a duty to warn that the campground was in a flood zone, to warn that severe weather was approaching, or to plan and prepare for flooding; that there was no evidence they had a duty to have and use speakers or sirens to warn guests; and that there was no evidence that appellants' injuries were caused by any negligence on the part of UME or the Rivers brothers. UME and the Rivers brothers filed a separate motion for traditional and no-evidence summary judgment addressing appellants' theories of alter ego and joint enterprise. WWGAF filed its own motion for summary judgment, asserting that it did not own or operate Camp Huaco, that it did not owe a duty to the Walkers and the Johnsons, and that it was a separate entity from Camp Huaco and could not be held liable under theories of joint enterprise or vicarious liability. The trial court signed several orders granting appellees' motions for summary judgment without specifying the grounds.

## Discussion

The first question to be addressed, the answer to which is dispositive of this appeal, is whether appellees owed any duty to the Walkers and the Johnsons. Even if we assume that the recreational use statute does not apply, we hold, as a matter of law, that appellees did not owe the

---

[3] *See* Tex. Civ. Prac. & Rem. Code § 75.002 (owner, lessee, or occupant of agricultural land who invites another onto premises for recreation owes invitee same duty that would be owed to trespasser and only owes duty not to injure invitee wilfully, wantonly, or through gross negligence); *see generally id*. §§ 75.001-.007 (chapter 75, titled "Limitation of Landowners' Liability").

3

Walkers and Johnsons a duty to warn of or ensure against rising river waters. Without such a duty, appellants' premises-liability claims must fail.[4]

When an injured invitee asserts a premises-liability claim, she must show that the owner or occupier had actual or constructive knowledge of a condition that posed an unreasonable risk of harm and did not exercise reasonable care to reduce or eliminate the risk and that such failure proximately caused her injury. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000). We initially note that appellants do not assert that a condition *on the premises* caused the tragedy and thus was the basis for liability. Instead, the injuries suffered by appellants were caused by a rain-swollen river that inundated the campground, a condition that *came to* the premises.

Regardless of that fact, Texas courts have consistently held as a matter of law that naturally occurring or accumulating conditions such as rain, mud, and ice do not create conditions

---

[4] Although appellants alleged both negligence and premises-defect claims, "negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010); *see Scurlock v. Pennell*, 177 S.W.3d 222, 224-25 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998)) ("Recovery for a negligent activity requires that a person have been injured by the activity itself, rather than by a condition created by the activity; in contrast, recovery for premises liability depends upon a failure to use ordinary care to reduce or to eliminate an unreasonable risk of harm created by a premises condition about which the owner or occupier [of land] knows or, in the exercise of ordinary care, should know."). The claims raised by appellants clearly alleged that appellees had failed to take various measures that would have made the campsite safe; they did not allege "contemporaneous conduct . . . that caused the injur[ies]." *See Smith*, 307 S.W.3d at 776. We therefore consider appellants' claims under a theory of premises liability. Regardless of the theory under which they are analyzed, appellants' claims would fail because, as we explain below, appellees did not owe the duty that appellants claim was breached. *See General Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008) ("Like any other negligence action, a defendant in a premises case is liable only to the extent it owes the plaintiff a legal duty.").

posing an unreasonable risk of harm. *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675-76 (Tex. 2004); *see Scott & White Mem. Hosp. v. Fair*, 310 S.W.3d 411, 412-14 (Tex. 2010) ("Because we find no reason to distinguish between the mud in *M.O. Dental* and the ice in this case, we hold that naturally occurring ice that accumulates without the assistance or involvement of unnatural contact is not an unreasonably dangerous condition sufficient to support a premises liability claim."); *Wal-Mart Stores, Inc. v. Surratt*, 102 S.W.3d 437, 445 (Tex. App.—Eastland 2003, pet. denied) (landowner "does not have a duty to protect its invitees from conditions caused by a natural accumulation of frozen precipitation on its parking lot because such an accumulation does not constitute an unreasonably dangerous condition").[5] The basis for those rulings is that rain, dirt, and mud are naturally occurring conditions beyond a landowner's control. *See, e.g.*, *M.O. Dental Lab*, 139 S.W.3d at 676 ("rain is beyond the control of landowners" and "accidents involving naturally accumulating mud and dirt are bound to happen, regardless of the precautions taken by landowners").

---

[5] *See also State Dep't of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex. 1993) (per curiam) (in premises defect case under Texas Tort Claims Act, supreme court held that "[w]hen there is precipitation accompanied by near-freezing temperatures, . . . an icy bridge is neither unexpected nor unusual, but rather, entirely predictable [and] is something motorists can and should anticipate when the weather is conducive to such a condition"); *Brownsville Navigation Dist. v. Izaguirre*, 829 S.W.2d 159, 160 (Tex. 1992) ("Plain dirt which ordinarily becomes soft and muddy when wet is not a dangerous condition of property for which a landlord may be liable."); *Lee v. K&N Mgmt., Inc.*, No. 03-15-00243-CV, 2015 WL 8594163, at *3-4 (Tex. App.—Austin Dec. 11, 2015, no pet.) (mem. op.) (plant that extended over edge of flowerbed was not unreasonably dangerous condition; "The Texas Supreme Court has held that certain naturally occurring substances generally do not pose an unreasonable risk of harm. . . . Under the facts of this case, the plant, like mud and dirt, may have formed a condition that posed a risk of harm, but on this record, we cannot conclude that it was an *unreasonable* risk of harm."); *City of Houston v. Cogburn*, No. 01-11-00318-CV, 2014 WL 1778279, at *4 (Tex. App.—Houston [1st Dist.] May 1, 2014, no pet.) (mem. op.) ("as a matter of law, naturally occurring conditions that are open and obvious do not create an unreasonable risk of harm for purposes of premises liability"; tree roots over which plaintiff tripped were "open and obvious and were a naturally occurring condition").

5

Requiring a landowner to protect an invitee from precipitation or other acts of nature would place an enormous burden on the landowner. *See id*.; *see also Fair*, 310 S.W.3d at 414 (requiring landowners "to guard against wintery conditions would inflict a heavy burden because of the limited resources landowners likely have on hand to combat occasional ice accumulations").

Further, an invitee is or should be "at least as aware" as the landowner of visible conditions that have "accumulated naturally outdoors" and thus "will often be in a better position to take immediate precautions against injury." *M.O. Dental Lab*, 139 S.W.3d at 676. In other words, as the supreme court has explained:

> When the condition is open and obvious or known to the invitee, however, the landowner is not in a better position to discover it. When invitees are aware of dangerous premises conditions—whether because the danger is obvious or because the landowner provided an adequate warning—the condition will, in most cases, no longer pose an unreasonable risk because the law presumes that invitees will take reasonable measures to protect themselves against known risks, which may include a decision not to accept the invitation to enter onto the landowner's premises. This is why the Court has typically characterized the landowner's duty as a duty to make safe or warn of unreasonably dangerous conditions that are not open and obvious or otherwise known to the invitee

*Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015) (citations omitted). Texas courts have repeatedly observed that a landowner "'is not an insurer'" of an invitee's safety and generally "has no duty to warn of hazards that are open and obvious or known to the invitee." *Id*. at 203-04 (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 769 (Tex. 2010)). Texas courts have held in various contexts that flooding due to heavy rains is an open and obvious hazard. *See, e.g.*, *State v. Shumake*, 199 S.W.3d 279, 288 (Tex. 2006) ("[T]he owner may assume that the recreational user needs no warning to appreciate the dangers of natural conditions, such as a sheer cliff, a rushing

6

river, or even a concealed rattlesnake. But a landowner can be liable for gross negligence in creating a condition that a recreational user would not reasonably expect to encounter on the property in the course of the permitted use."); *City of Austin v. Leggett*, 257 S.W.3d 456, 475 (Tex. App.—Austin 2008, pet. denied) (flooded intersection was readily apparent and presented obstacle that would be open and obvious to ordinary motorists).

We see no useful distinction to be drawn between ice and mud, which are natural conditions caused by rain and freezing temperatures, and rising river waters, caused by a natural weather event over which appellees could exercise no control. *See Fair*, 310 S.W.3d at 414. The June 2010 flood was not a condition inherent in or on the land in question. Instead, the flooding was a condition that *came to* the campground as the adjacent river, the same river that made the land an attractive place to camp, rose due to heavy rains. The Walkers and the Johnsons had gone canoeing on the river the day before the flooding occurred, and thus they were obviously aware of the river's proximity to their campsite. This situation is indeed a tragic one, but it is not one for which appellees can be held to bear legal responsibility. We hold that as a matter of law appellees had no duty to warn the Walkers and Johnsons of the possibility that the river they were camping beside might rise in the event of heavy rain, posing a risk to the campground.[6]

---

[6] We further note that, even if the campground had posted warnings or issued flood cautions when the Walkers and Johnsons checked into the campsite, there is nothing in this record to indicate that events would have turned out any differently. The Walkers and Johnsons went to bed not having heard that heavy rains would approach and slept heavily enough that none of them woke up during the storm or to warnings by the local sheriff's officers, who drove through the campsite at about 4:00 a.m., blowing an airhorn and flashing their car's lights as they announced over their PA system that the river was rising.

## Conclusion

Because appellees did not owe a duty to warn of or attempt to make the campground safe against flooding of the adjacent river due to torrential rain, the trial court properly granted summary judgment in their favor.  We affirm the trial court's orders.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed:  June 3, 2016

8