08-0970 Scott and White Memorial Hospital v. Gary and Linda Fair








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 
08-0970
════════════
 
Scott and White Memorial 
Hospital and Scott, Sherwood and Brindley Foundation, 
Petitioners,
 
v.
 
Gary Fair and Linda Fair, 
Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Third 
District of Texas
════════════════════════════════════════════════════
 
 
Argued December 15, 2009
 
            
Chief Justice Jefferson 
delivered the opinion of the Court.
 
            
In this premises liability case, we must decide whether ice that 
accumulates naturally outside a business due to a winter storm poses an 
unreasonable risk of harm.  Because we hold that it does not, we reverse in 
part the court of appeals’ judgment and render judgment that the respondents 
take nothing.
I
Factual and Procedural Background
 
            
Gary Fair drove his wife to a doctor’s appointment at Scott and White 
Memorial Hospital the morning after a winter storm.  The Fairs walked 
through the parking lot, across the roadway separating the parking lot from the 
hospital, and next to a set of stairs leading to the building.  There was 
ice in the parking lot, on the road, and on the steps.  After the 
appointment, Fair left the building to retrieve his car while his wife waited 
inside.  Fair slipped and fell on the road that separated the hospital from 
the parking lot.  The Fairs sued Scott and White Memorial Hospital and 
Scott, Sherwood and Brindley Foundation[1] (Scott and White) for damages arising 
from injuries Fair sustained in the fall.
            
Scott and White moved for summary judgment, asserting that the 
accumulated ice did not pose an unreasonable risk of harm.  The trial court 
granted Scott and White’s motion and rendered judgment that the Fairs take 
nothing.[2]
            
The court of appeals reversed, holding that Scott and White failed to 
“conclusively establish that the ice accumulation was in its natural state and 
was not an unreasonably dangerous condition.”  2008 Tex. 
App. LEXIS 4277, at *11.  We granted Scott and White’s petition for 
review, 52 Tex. Sup. Ct. J. 1133, 1140 (Aug. 21, 2009), and now 
reverse.
II
Discussion
A.        
Naturally accumulated ice does not pose an unreasonable risk of 
harm.
            
In a premises liability action, the duty owed by a premises owner depends 
on the plaintiff’s status.  In this case, the parties agree that the Fairs 
were invitees.  2008 Tex. App. LEXIS 4277, at 
*5.  Thus, Scott and White owed a duty “to exercise reasonable care 
to protect against danger from a condition on the land that creates an 
unreasonable risk of harm of which the owner or occupier knew or by the 
exercise of reasonable care would discover.”  CMH 
Homes, Inc. v. Daenen, 15 S.W.3d 97, 101 (Tex. 
2000).  Scott and White asserts 
that the naturally accumulated ice on its premises did not pose an unreasonable 
risk of harm to invitees.  We agree.
            
On several prior occasions, we have addressed whether certain naturally 
occurring conditions create unreasonable risks of harm.  We have held that 
dirt in its natural state does not pose such a risk.  See Johnson County 
Sheriff’s Posse, Inc. v. Endsley, 926 S.W.2d 284, 
287 (Tex. 1996) (“The natural state of dirt, that it may be slippery when wet or 
may contain small rocks, can present a hazard under the right conditions, but 
not unreasonably so. . . . [D]irt 
containing small rocks is not an unreasonably dangerous condition for which a 
landlord may be held liable . . . .”); Brownsville 
Navigation Dist. v. Izaguirre, 829 S.W.2d 159, 
160-61 (Tex. 1992) (“Plain dirt which ordinarily becomes soft and muddy when wet 
is not a dangerous condition of property for which a landlord may be 
liable.”).  More recently, we held that “[o]rdinary mud that accumulates naturally on an outdoor 
concrete slab without the assistance or involvement of unnatural contact is, in 
normal circumstances, nothing more than dirt in its natural state and, 
therefore, is not a condition posing an unreasonable risk of harm.”  M.O. Dental Lab v. Rape, 139 S.W.3d 671, 676 (Tex. 2004) (per 
curiam).  We recognized that holding a 
landowner accountable for naturally accumulated mud would impose a heavy burden 
because rain, a cause of mud, is beyond a premises owner’s control.  
Id.  Further, mud-induced 
accidents are likely to occur regardless of precautions taken by landowners, and 
invitees are often better positioned to avoid the dangers associated with muddy 
walkways.  Id.  Thus, because the mud in M.O. Dental 
accumulated due to rain and remained in its natural state, it was not a 
condition that posed an unreasonable risk of harm.  Id.
            
Numerous courts of appeals have applied M.O. Dental’s holding to 
premises liability cases involving other naturally occurring conditions, 
including ice,[3] and have consistently concluded that 
naturally formed ice is not an unreasonably dangerous condition for premises 
liability purposes.  See, e.g., Almazon v. Amli 
Residential Props. Ltd. P’ship, No. 03-08-00297-CV, 
2009 Tex. App. LEXIS 9266, at *7-*8 (Tex. App.–Austin Dec. 3, 2009, no 
pet.) (mem. 
op.).  And, many have found no significant distinction between naturally 
occurring ice and naturally occurring mud.  See Gagne v. Sears, Roebuck 
& Co., 201 S.W.3d 856, 858 (Tex. App.–Waco 2006, no pet.); Griffin v. 1438, Ltd., No. 02-03-255-CV, 2004 
Tex. App. LEXIS 6403, at *9 (Tex. App.–Fort Worth July 15, 2004, no pet.) (mem. op.); see also Almazon, 2009 Tex. App. LEXIS 9266, at *3-*4 (finding 
the rule for naturally occurring substances, such as mud, ice, and slime, to be 
the same); Haney v. Jerry’s GM, Ltd., No. 08-07-00183-CV, 2009 Tex. App. 
LEXIS 1056, at *6-*7 (Tex. App.–El Paso Feb. 12, 2009, no pet.) (emphasizing the Gagne court’s analysis); 
Wal-Mart Stores, Inc. v. Surratt, 102 S.W.3d 437, 443-44 (Tex. 
App.–Eastland 2003, pet. denied) (citing the dirt cases as support).  
Before today, we have never addressed whether naturally occurring ice poses an 
unreasonable risk of harm.
            
The Fairs argue that ice should be treated differently from mud because, 
unlike mud, icy conditions occur rarely in Texas.  We see no basis for such 
a distinction.  Both conditions pose the same risk of harm, and ice, like 
mud, results from precipitation beyond a premises owner’s control.  
Further, invitees “are at least as aware as landowners of the existence of [ice] 
that has accumulated naturally outdoors and will often be in a better position 
to take immediate precautions against injury.”  M.O. 
Dental, 139 S.W.3d at 676; see also State Dep’t of Highways & 
Pub. Transp. v. Kitchen, 867 S.W.2d 784, 786 (Tex. 1993) (per 
curiam) (“When there is precipitation accompanied by 
near-freezing temperatures . . . [ice] is neither 
unexpected nor unusual, but rather entirely 
predictable. . . . [A]n icy bridge is something  motorists can and should anticipate when the weather 
is conducive to such a condition.”).  As other jurisdictions have 
recognized:
 
The magnitude of the burden on [the] defendant to 
prevent injuries from snow or ice is great. . . . [N]atural winter conditions make it impossible to prevent all 
accidents.  The plaintiff is in a much better position to prevent injuries 
from ice or snow because the plaintiff can take precautions at the very moment 
the conditions are encountered.
 
Eiselein v. K-Mart, 
Inc., 868 P.2d 893, 
898 (Wyo. 1994).[4]
            
Ice in Texas may occur less frequently than mud, but frequency is only 
one of many factors relevant to our analysis.  And, the relative 
irregularity of icy conditions in this state may weigh against imposing 
liability.  Requiring premises owners to guard against wintery conditions 
would inflict a heavy burden because of the limited resources landowners likely 
have on hand to combat occasional ice accumulations.  See Surratt, 
102 S.W.3d at 443 (“[A] premises owner/operator [will be required] to expend a 
great deal of physical and financial effort to protect its invitees from a 
naturally occurring condition which usually disappears on its own in a short 
period of time.”); cf. Geise v. Lee, 529 P.2d 
1054, 1056 (Wash. 1975) (imposing liability in a state accustomed to snow and 
ice because landlords are already “‘armed with an ample supply of salt, sand, 
scrapers, shovels and even perhaps a snow blower’” (quoting Fuller v. Hous. Auth. of Providence, 279 A.2d 438, 440 (R.I. 
1971)).  Because we find no reason to distinguish between 
the mud in M.O. Dental and the ice in this case, we hold that naturally 
occurring ice that accumulates without the assistance or involvement of 
unnatural contact is not an unreasonably dangerous condition sufficient to 
support a premises liability claim.
B.        
Scott and White established that the ice was in its natural 
state.
            
Generally, “a natural accumulation of ice . . . is 
one which accumulates as a result of an act of nature,” Coletta v. Univ. of Akron, 550 N.E.2d 510, 512 
(Ohio Ct. App. 1988), whereas an “‘[u]nnatural’ 
accumulation . . . refer[s] to causes and factors other 
than the inclement weather conditions . . . i.e., 
to causes other than the meteorological forces of nature,”  Porter v. 
Miller, 468 N.E.2d 134, 136 (Ohio Ct. App. 1983).[5]  Here, the court of appeals reversed 
the trial court’s judgment because it concluded that Scott and White did not 
“conclusively establish that the ice accumulation was in its natural 
state.”  2008 Tex. App. LEXIS 4277, at *11.  
We disagree.
            
The summary judgment evidence, which includes affidavits from a local 
meteorologist and the Scott and White grounds supervisor and deposition 
testimony from Fair, shows that an ice storm hit the Temple area causing ice to 
accumulate on the Scott and White grounds, including the road where Fair 
fell.  The court of appeals discounted the testimony of Scott and White’s 
grounds supervisor, Melissa Frei, which detailed the 
impact of the winter storm on the hospital property.  Specifically, the 
court of appeals determined that “Frei’s affidavit 
[could not] support summary judgment with regard to whether the ice accumulations . . . were in their natural 
state” because Frei’s deposition testimony revealed 
that she was not at the scene when Fair’s accident occurred nor called to the 
scene following the accident.  Id. at 
*10.  But such testimony does not controvert Frei’s personal knowledge of ice accumulations on the 
hospital grounds.  Frei personally observed the 
winter storm and the resultant ice accumulations on the Scott and White grounds, 
including on the road in front of the Special Treatment Center (where Fair 
fell).  This, together with the local meteorologist’s testimony and Fair’s 
deposition testimony stating that an ice storm occurred in the area the night 
prior to his fall and that ice was present on the road where he fell, satisfies 
Scott and White’s summary judgment burden.  Furthermore, the Fairs did not 
present any controverting evidence (or even suggest) 
that the ice resulted from something other than the winter storm.  Thus, 
the ice in this case accumulated naturally and did not pose an unreasonable risk 
of harm necessary to sustain the Fairs’ premises liability action.
C.        
Neither exception asserted by the Fairs applies.
            
The Fairs propose two exceptions to the natural accumulation rule and 
assert there is evidence to support both.  They first contend that a 
premises owner should be liable when it has “actual or implied notice that a 
natural accumulation of ice or snow on his property created a condition 
substantially more dangerous than a business invitee should have anticipated by 
reason of knowledge of the conditions generally prevailing in the area.”  
Cooper v. Valvoline Instant Oil 
Change, No. 07AP-392, 2007 Ohio App. LEXIS 5189, at *14 (Ohio Ct. App. Nov. 
6, 2007).  Second, the Fairs assert that the natural accumulation 
rule does not apply when a landowner is “actively negligent in permitting or 
creating an unnatural accumulation of ice or snow.”  Id. at *15.  
Assuming, without deciding, that these exceptions are cognizable under Texas 
law, there is no evidence to support either one.[6]
            
Regarding the first exception, the Fairs argue that Scott and White’s use 
of a deicer, “Meltz,” made the ice slipperier, thereby 
creating “a condition substantially more dangerous than a business invitee 
should have anticipated.”  Id. at 
*14.  We reject this argument.  In Cooper, the case 
relied on by the Fairs, the court explained that this 
exception applies only in situations where the ice or snow conceals a defect or 
hazard that an invitee should not anticipate from his general knowledge of 
wintery conditions in the area.  Id. at 
*19-*21.  For instance, the exception would arise when accumulated 
snow or ice covers a normally open and obvious danger, such as a deep hole in a 
parking lot or an eight-inch raised concrete bumper.  Id. at *19-*20 
(citing Mikula v. Tailors, 263 N.E.2d 
316, 322 (Ohio 1970) and Koss v. Cleveland Holding Corp., No. 34111, 1975 
Ohio App. LEXIS 6565, at *5 (Ohio Ct. App. July 10, 1975)); see also Weaver 
v. Standard Oil Co., 572 N.E.2d 205, 207 (Ohio Ct. App. 1989) (whether ice 
that covered a recessed steel plate in a gas station lot created a condition 
substantially more dangerous was a question for the jury).  Here, however, 
there is no evidence that the ice concealed any dangerous condition beneath 
it.  In fact, the hazard complained of by the Fairs is the slipperiness of 
the ice itself.  Such a danger is one that is normally associated with ice, 
one that Fair was clearly aware of, and one not 
substantially more dangerous than should be anticipated.  See 
Cooper, 2007 Ohio App. LEXIS 5189, at *21 (when the hazard is “simply the 
slippery nature of the ice on the sidewalk,” a substantially more dangerous 
condition than is normally associated with ice and snow is not created); 
Nolan v. Kroger Co., No. 93OT026, 1993 Ohio App. LEXIS 5722, at *3-*4 (Ohio 
Ct. App. Dec. 3, 1993) (“Injuries resulting from the failure to remove the snow 
and ice are not compensable when the injury resulted from the slippery nature of 
snow and ice.  When the injuries result from . . . [ice’s] propensity to conceal 
that which lies beneath it, then an exception to the general rule of 
non-liability occurs.”).
            
Further, the application of a deicer does not create a substantially more 
dangerous condition.  In this case, the grounds supervisor testified that 
Meltz was used once the evening before Fair’s accident 
when conditions first became icy, but does not indicate where on the hospital 
grounds Meltz was applied.  Scott and White’s 
written procedures manual for handling ice accumulations states that employees 
should “[a]pply the material Meltz to sidewalks and steps at [certain] locations,” 
including the “[f]ront entrance” of the Special 
Treatment Center.  Assuming that deicer was applied to the ice on the 
street where Fair slipped, a concealed danger still was not created.  “‘The 
spreading of de-icing materials on certain portions of a parking lot will, as a 
matter of law, neither create a hidden danger nor impute superior knowledge 
thereof to a property owner.’”  Klein v. Ryan’s Family Steak House, 
No. 20683, 2002 Ohio App. LEXIS 2335, at *10 (Ohio Ct. App. May 15, 2002) 
(quoting Goodwill Indus. of Akron, Ohio, Inc. v. Sutcliffe, No. 19972, 
2000 Ohio App. LEXIS 4131, at *11-*12 (Ohio Ct. App. Sept. 13, 2000)).  
Thus, the Fairs have not raised a fact issue as to whether the naturally 
accumulated ice on which Fair slipped created a substantially more dangerous 
condition than an invitee should reasonably have anticipated from his knowledge 
of the inclement winter weather in the area.[7]
            
There is no fact issue with respect to the second exception either.  
As to this exception, the Fairs assert that Scott and White negligently applied 
the Meltz, causing the ice to refreeze, and thereby 
creating an unnatural accumulation.  The Ohio cases on which the Fairs rely 
for support distinguish between natural and unnatural accumulations of ice by 
defining an unnatural accumulation as one that entails “causes and factors 
other than the inclement weather conditions of low temperature, strong 
winds and drifting snow.”  Porter, 468 N.E.2d at 
136.  Here, it is uncontested that the source of the ice was a 
winter storm.  Therefore, for the Fairs to prevail under this exception, 
application of the deicer would have to convert the natural accumulation into an 
unnatural one.  Because the deicer is composed of a salt-like compound, we 
look to other jurisdictions for guidance regarding whether application of salt 
to a natural accumulation of ice renders the ice no longer natural.
            
To support their position, the Fairs direct the Court to Estep v. B.F. 
Saul Real Estate Investment Trust, 843 S.W.2d 911 (Ky. Ct. App. 1992), a 
Kentucky case in which the plaintiff fell on ice and snow outside a shopping 
mall.  Estep, 843 S.W.2d at 912.  In 
that case, the evidence showed that the parking lot had been scraped and the 
snow piled, but it was unclear whether salt had been applied.  Id. at 912-14.  Although the Kentucky Supreme 
Court had previously held that “natural outdoor hazards which are as 
obvious to an invitee as to the owner of the premises do not constitute 
unreasonable risks to the former which the landowner has a duty to remove 
or warn against,” Standard Oil Co. v. Manis, 
433 S.W.2d 856, 858 (Ky. 1968), the Estep court concluded that when a 
premises owner attempts to clear its lot of ice and snow, it must do so 
reasonably or be subject to liability.  Estep, 843 
S.W.2d at 914-15.  And, whether the premises owner acted reasonably 
is a question for the jury.  Id.
            
The Fairs’ reliance on Estep is misplaced.  In Estep, 
there was no evidence that salt was applied to the snow and ice during clearing 
of the parking lot, and the plaintiff did not argue that the premises owner was 
liable because the ice on which the plaintiff fell was unnatural.  Instead, 
the plaintiff contended that the ice was not an obvious natural hazard; the 
issue of whether the ice was unnatural was never discussed.  Here, the 
question before us is whether natural ice becomes unnatural when deicer is 
applied.  Consequently, we are unpersuaded that 
Estep is relevant to our analysis.
            
Notably, an examination of Ohio jurisprudence, which developed the 
exception on which the Fairs rely, reveals that “[s]alting or shoveling [ice or snow] does not turn a natural 
accumulation into an unnatural accumulation,” and even the application of a 
chemical deicer to a natural accumulation of ice does not render the ice 
unnatural.  Cunningham v. Thacker Servs., 
Inc., No. 03AP-455, 2003 Ohio App. LEXIS 5398, at *10 (Ohio Ct. App. Nov. 
13, 2003); Gyulay v. Rolling Acres Mgmt. 
Inc., No. 10356, 1982 Ohio App. LEXIS 11507, at *4-*5 (Ohio Ct. App. June 2, 
1982).  Furthermore, ice that melts and later refreezes is still deemed a 
natural accumulation.  See Kaeppner v. Leading 
Mgmt., Inc., No. 05AP-1324, 2006 Ohio App. LEXIS 3523, at *14 (Ohio Ct. App. 
July 13, 2006).
            
Again, assuming that deicer was applied to the ice on the road where Fair 
slipped,[8] the Fairs still cannot prevail under this 
proposed exception.  The Fairs assert that Scott and White’s negligent 
deicing caused the ice to refreeze, rendering it unnatural.  But, “the mere 
fact that [a premises owner] salted the sidewalk and then allowed the sidewalk 
to freeze again does not turn the natural accumulation of snow and ice into an 
accumulation that is unnatural.”  Lehman v. Cracker 
Barrel Old Country, No. 2004-CA-0048, 2005 Ohio App. LEXIS 351, at *11 (Ohio 
Ct. App. Jan. 28, 2005).  In other words, salting, shoveling, or 
applying deicer to a natural ice accumulation does not transform it into an 
unnatural one.  To find otherwise would punish business owners who, as a 
courtesy to invitees, attempt to make their premises safe.  See 
Cunningham, 2003 Ohio App. LEXIS, at *10.  Because 
there is no evidence that Scott and White’s actions made the ice accumulation 
unnatural, the second exception urged by the Fairs does not 
apply.
III
Conclusion
            
A condition on a premises owner’s property, like a natural accumulation 
of ice or mud, certainly poses a risk but, as a matter of law, does not present 
an unreasonable risk of harm.  We reverse in part the court of appeals’ 
judgment and render judgment that the Fairs take 
nothing.  Tex. R. App. P. 60.2(c).
 
                                                                                                                                                                                    
______________________________
Wallace B. 
Jefferson
                                                                                                
Chief Justice
                                                                                                                                    

OPINION 
DELIVERED:      May 7, 2010
 
                                    

 
                                                                                                            

 
 
 
 
 
 
 
                        

 
 









[1] Scott 
and White states that “[w]hile the name of the 
Petitioner gives the appearance that it is two entities, it is actually a single 
entity.” The Fairs also sued “Scott and White Memorial Hospital” and Scott and 
White Properties, Inc.; however, the Fairs have not challenged the portion of 
the court of appeals’ judgment affirming summary judgment as to those 
parties.

[2] The 
Fairs also moved for summary judgment, which the trial court denied.  The 
Fairs did not challenge that ruling.

[3] See 
Almazon v. Amli Residential 
Props. Ltd. P’ship, No. 03-08-00297-CV, 2009 Tex. App. LEXIS 9266, at 
*3-*4, *7 (Tex. App.–Austin Dec. 3, 2009, no pet.) (mem. op.) (“[T]he natural 
accumulation of ice–is not unreasonably dangerous for purposes of premises 
liability.”); Smith v. Shofner Auto Repair, 
Inc., No. 02-08-285-CV, 2009 Tex. App. LEXIS 2658, at *4 n.8, *5 (Tex. 
App.–Fort Worth Apr. 9, 2009, no pet.) (mem. op.) (“[N]aturally-occurring ice in a parking lot does not constitute 
an unreasonably dangerous condition under the law . . . .”); 
Haney v. Jerry’s GM, Ltd., No. 08-07-00183-CV, 2009 Tex. App. LEXIS 1056, 
at *6-*7 (Tex. App.–El Paso Feb. 12, 2009, no pet.) (“[N]aturally forming ice is not an unreasonably dangerous 
condition that would impose liability on a premises owner/operator.”); 
Eubanks v. Pappas Rests., Inc., 212 S.W.3d 838, 840 (Tex. App.–Houston 
[1st Dist.] 2006, no pet.) (holding that slime, 
composed of topsoil, leaves, and grass, is not an unreasonably dangerous 
condition); Gagne v. Sears, Roebuck & Co., 201 S.W.3d 856, 858 (Tex. 
App.–Waco 2006, no pet.) (“[W]e hold that the natural accumulation of ice on a 
sidewalk near the entrance of a business does not pose an unreasonable risk of 
harm to invitees.”); Tex. Dep’t of Transp. v. Martinez, No. 
04-04-00867-CV, 2006 Tex. App. LEXIS 4420, at *18-*19 (Tex. App.–San Antonio May 
24, 2006, pet. denied) (deciding that the slippery road condition caused by rain 
is not a condition posing an unreasonable risk of harm); Griffin v. 1438, 
Ltd., No. 02-03-255-CV, 2004 Tex. App. LEXIS 6403, at *9-*10 (Tex. App.–Fort 
Worth July 15, 2004, no pet.) (mem. op.) (a premises owner does not owe a duty to 
protect an invitee “from the natural accumulation of frozen precipitation on its 
parking lot”); see also Wal-Mart Stores, Inc. v. Surratt, 102 S.W.3d 437, 
445 (Tex. App.–Eastland 2003, pet. denied) (decided before M.O. Dental, 
holding naturally frozen precipitation does not constitute an unreasonably 
dangerous condition).

[4] See 
also Kellerman v. Car City Chevrolet-Nissan, 713 
N.E.2d 1285, 1289 (Ill. App. Ct. 1999) (“[S]now and ice is a hazard . . . known to 
all. . . . [I]t [is] an unreasonable burden for a business 
to keep  . . . parking lots, sidewalks, and entryways safe 
from naturally accumulated snow and ice . . . .”); 
Standard Oil Co. v. Manis, 433 S.W.2d 856, 859 
(Ky. 1968) (“[T]he hazard faced by [invitee] was created by natural 
elements.  It was outside, and exposed in broad 
daylight. . . . [Invitee] was fully aware of the 
accumulation of ice and snow in the area.”); Sidle v. Humphrey, 233 
N.E.2d 589, 592 (Ohio 1968) (“The danger from ice and snow is an obvious danger 
and an occupier of premises should expect that an invitee on his premises will 
discover and realize that danger and protect himself against it.”); Cooper v. 
Valvoline Instant Oil Change, No. 07AP-392, 2007 
Ohio App. LEXIS 5189, at *23-*24 (Ohio Ct. App. Nov. 6, 2007) (“‘[I]t is assumed 
that reasonable individuals will understand that winter conditions can create 
dangers from ice and snow, and individuals will take the necessary 
precautions.’”); 62A Am. Jur. 2d Premises Liability § 656 (2005) (“[T]he danger from ice and snow . . . is an obvious one, and the 
occupier of the premises may expect that an invitee on his or her premises will 
discover and realize the danger and protect himself or herself.”).

[5] Texas court of appeals draw this 
distinction as well. See Almazon, 2009 Tex. 
App. LEXIS 9266, at *7 (ice accumulating from frozen precipitation was natural, 
not man-made); Smith, 2009 Tex. App. LEXIS 2658, at *4-*5 (ice resulting 
from a winter storm is naturally occurring); Haney, 2009 Tex. App. LEXIS 
1056, at *6-*7 (same); Gagne, 201 S.W.3d at 856, 858 (same); 
Griffin, 2004 Tex. App. LEXIS 6403, at *9-*10 (distinguishing a case 
involving ice created by a leaking vending machine because it was not a natural 
accumulation); Surratt, 102 S.W.3d at 439 (ice is a natural accumulation 
when caused by an ice storm); Furr’s, Inc. 
v. Logan, 893 S.W.2d 187, 189, 191-92 (Tex. App.–El Paso 1995, no writ.) 
(unnatural ice accumulation caused by leaking vending machine could support a 
premises liability action); see also Brookshire Grocery Co. v. Taylor, 
222 S.W.3d 406, 409 (Tex. 2006) (ice on the floor from a soft drink dispenser 
was not naturally occurring and could be an unreasonably dangerous condition); 
M.O. Dental Lab v. Rape, 139 S.W.3d 671, 676 (Tex. 2004) (mud created by 
falling precipitation was natural).

[6] Other 
jurisdictions, which have adopted a similar liability rule with respect to 
natural accumulations of ice and snow, recognize additional exceptions to the 
ones asserted by the Fairs in this case.  See, e.g., Reed v. 
Galaxy Holdings, Inc., 914 N.E.2d 632, 636-37 (Ill. App. Ct. 2009) 
(“[P]roperty owners and business operators may be 
liable for injuries resulting from an accumulation of ice, water, or snow if a 
plaintiff establishes that the means of ingress or egress was unsafe for any 
reason other than a natural accumulation of ice, water, or snow.”); 
Judge-Zeit v. Gen. Parking Corp., 875 N.E.2d 
1209, 1216 (Ill. App. Ct. 2007) (“[A] contract to remove snow creates a duty to 
remove even natural accumulations of snow.”); Wells v. Great Atl. & Pac. 
Tea Co., 525 N.E.2d 1127, 1131 (Ill. App. Ct. 1988) (“[A] voluntary 
undertaking to remove snow and ice may subject the landowner to liability if the 
removal is performed negligently.”); Stapleton v. Citizens Nat’l Corp., 
No. 2009-CA-000264-MR, 2010 Ky. App. Unpub. LEXIS 81, 
at *5-*6 (Ky. Ct. App. Jan. 29, 2010) (an exception exists “when the owner 
undertakes protective measures that heighten or conceal the 
nature of the naturally-occurring condition, thus making it worse”); Willis 
v. Springfield Gen. Osteopathic Hosp., 804 S.W.2d 416, 421-22 (Mo. Ct. App. 
1991) (a landlord or an invitor “may become obligated 
either by agreement or a course of conduct over a period of time to remove snow 
and ice from common areas, thereby assuming a duty to exercise ordinary care to 
remove the snow and ice to make the common area reasonably safe.” (internal quotations omitted)); Maschoff v. Koedding, 439 S.W.2d 234, 236 (Mo. Ct. App. 1969) (an 
exception arises when “it [is] shown that although the landlord did not 
expressly agree to perform the duty of removal, he obligated himself to do so by 
his course of conduct over a period of time”); see also 62A Am. Jur. 2d 
Premises Liability § 657 (“In some jurisdictions, the 
traditional rule . . . has been modified to some extent, the 
courts holding that the owner of a business has a duty to remove natural 
accumulations of ice and snow which he or she knows or should know created a 
condition substantially more dangerous to his or her business invitees than they 
could reasonably have anticipated from their knowledge of weather conditions 
prevailing generally in the area, or from their knowledge of the terrain, or 
that the property owner or tenant has a duty to act within a reasonable time 
after notice to remove snow and ice when it accumulates in ridges or elevations 
of such size and character as to unreasonably obstruct travel and constitute a 
danger to pedestrians traveling thereon.” (footnotes 
omitted)). However, because none of these exceptions are at issue here, we 
express no opinion on their viability under Texas law.

[7] Because 
we find that the ice did not create a substantially more dangerous condition 
than an invitee would normally anticipate, we do not reach whether Scott and 
White had actual or implied notice of such a condition.  See Cooper, 
2007 Ohio App. LEXIS 5189, at *14 (setting forth the elements of the 
exception).

[8] There 
is some evidence that Scott and White applied sand to the road where Fair fell, 
however, the Fairs do not complain that Scott and White was negligent in sanding 
the road or that the sanding created an unnatural accumulation of ice.